IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH SCHWARTZ, et al.,          :     CONSOLIDATED UNDER
                                  :     MDL-875
          Plaintiffs,             :
                                  :
     v.                           :
                                  :
ABEX CORP., et al.,               :
                                  :     E.D. PA CIVIL ACTION NO.
          Defendants.             :     2:05-CV-02511-ER[1]

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              MAY 27, 2015

TABLE OF CONTENTS

I.    BACKGROUND ............................................... 3
II.   LEGAL STANDARD ........................................... 6
III.  DISCUSSION ............................................... 7
      A.   Defendants' Arguments.............................. 8
      B.   Plaintiffs' Arguments.............................. 10
      C.   Manufacturer Liability Under Pennsylvania Law....... 12
           1.   Restatement (Second) of Torts § 402A........... 14
           2.   Pennsylvania Social Policy..................... 32
           3.   Doctrinal Trends............................... 38
           4.   Asbestos-Related Pennsylvania Authority........ 47
           5.   Prediction of Pennsylvania Law................. 55
                a.   Strict Liability Claims................... 59
                b.   Negligence Claims......................... 62
      D.   General Application of Strict Liability and Negligence
           Principles......................................... 74
      E.   Resolution of the Present Case..................... 84
IV.   CONCLUSION ............................................... 86

_____

        [1]    This memorandum applies to the motion for summary
judgment by a product manufacturer defendant in Schwartz v. Abex
Corp., No. 2:05-cv-2511 (ECF No. 61)(airplane engine
manufacturer Pratt & Whitney). The issue has also been raised by
three other product manufacturers in Rabovsky v. Air & Liquid
Systems Corp., No. 2:10-cv-3202 (ECF No. 114)(valve manufacturer
Crane Co.), and Mortimer v. A.O. Smith Corp., No. 2:13-cv-4169
(ECF No. 318)(pump manufacturer Aurora Pump Co.) and (ECF No.
287)(condulet and fitting manufacturer Crouse-Hinds). These
cases will be addressed by separate orders.

Before the Court is the issue whether, under Pennsylvania law, a manufacturer Defendant is liable for harm arising from asbestos-containing component parts that it neither manufactured nor supplied, but which were used with its product. In the vernacular of the asbestos bar, this is the issue of whether Pennsylvania law recognizes the so-called "bare metal defense."[2] To date, the Pennsylvania Supreme Court has never squarely addressed this issue in the context of an asbestos case. Therefore, it will be necessary to predict Pennsylvania state law on this issue in order to resolve Defendant's motion.

For the reasons that follow, the Court now predicts that under Pennsylvania law a manufacturer (or supplier) of a product (1) is not liable in <u>strict liability</u> for aftermarket asbestos-containing component parts that it neither manufactured nor supplied, even if used in connection with that manufacturer's (or supplier's) product, but (2) has a common law duty — creating a potential cause of action in <u>negligence</u> — to warn of the asbestos hazards of such aftermarket component parts if it (a) knew that an asbestos-containing component part of that type would be used with its product, and (b) knew at the

_____

[2]    As explained by this Court in <u>Conner v. Alfa Laval, Inc.</u>, which addressed the issue under maritime law, the so-called "bare metal defense" is more properly understood as a challenge to a plaintiff's prima facie case to prove duty and/or causation. 842 F. Supp. 2d 791, 793 n.2 (E.D. Pa. Feb. 1, 2012) (Robreno, J.).

time it placed its product into the stream of commerce that

there were hazards associated with asbestos.[3] To be clear, a

product manufacturer is not liable in strict liability for

asbestos-containing component parts that it neither manufactured

nor supplied (even if it knew those parts would be used with its

product), but can be liable in negligence if it knew those

component parts would be used with its product, knew asbestos

was hazardous, and failed to provide a warning that was adequate

and reasonable under the circumstances.[4]

## I.   BACKGROUND

This case was initially filed in the Philadelphia

Court of Common Pleas, and was thereafter removed by Defendant

to the United States District Court for the Eastern District of

Pennsylvania on grounds of federal officer jurisdiction,

---

[3]     Of course, a plaintiff must also present evidence
sufficient to establish causation with respect to the asbestos
component part at issue (i.e., that asbestos from that part was
a substantial factor in the development of the illness). This is
required in all asbestos cases governed by Pennsylvania law
(regardless of whether the "bare metal" issue is presented). See
Gregg v. VJ Auto Parts, Co., 943 A.2d 216, 225-26 (Pa. 2007);
Linster v. Allied Signal, Inc., 21 A.3d 220, 223-24 (Pa. Super. Ct.
2011); Howard v. A.W. Chesterton Co., 31 A.3d 974, 979 (Pa. Super.
Ct. 2011).

[4]     To be clear, under this rule, even if a plaintiff
provides evidence that a manufacturer defendant knew its product
would be used with an asbestos-containing component part, and
knew that asbestos was hazardous, there still may remain a
disputed issue of material fact for the jury as to whether any
warning provided – or not provided – was adequate and reasonable
under the circumstances. (For further discussion, see fn.78.)

pursuant to 28 U.S.C. §§ 1331 and 1442, where it became part of MDL-875.

Plaintiffs in asbestos litigation are generally workers (or their heirs) who were exposed to asbestos while working with or around asbestos-containing products. Defendants who raise the so-called "bare metal defense" in asbestos litigation are manufacturers of various products (such as pumps, valves, boilers, turbines, and airplane engines), which were used with asbestos-containing component parts (such as gaskets, packing, or external insulation) that Defendants neither manufactured nor supplied.

Plaintiffs typically bring both negligence and strict product liability claims against Defendants, alleging that Defendants are liable for failing to warn of the hazards of asbestos in component parts manufactured and supplied by entities other than Defendants but used with Defendants' products after Defendants had placed their products into the stream of commerce. As in the present case, Defendants often move for summary judgment on the ground that they are not liable for injuries caused by asbestos products or component parts (such as insulation, gaskets, and packing) that were used in connection with their product, but which they did not manufacture or supply. In other words, Defendants assert the so-called "bare metal defense."

4

As to the claims now before the Court, Joseph Schwartz, the Decedent in the present action, was employed as an airplane propeller mechanic and crew chief during the years 1957 to 1967, working at two Air Force bases in Pennsylvania. Defendant Pratt & Whitney manufactured airplane engines used with external insulation.[5] Mr. Schwartz was diagnosed with mesothelioma, for which Plaintiff alleges Defendant is liable. He was deposed in April of 2005 and died in February of 2006.

Plaintiff concedes that she has not proffered evidence that Defendant manufactured or supplied the particular asbestos-containing component part (external insulation) from which the asbestos exposure at issue is alleged to have occurred. Instead, she argues that Defendant Pratt & Whitney is, nonetheless, liable for injury arising from this insulation because it knew or could foresee that its products (engines) would be used with asbestos-containing external insulation and failed to warn about this anticipated dangerous use of its engines.

---

[5]     Other common product and component part combinations include: pumps used with gaskets and packing; valves used with gaskets and packing; boilers used with external insulation; and turbines used with external insulation. Sometimes the component parts at issue (i.e., those that Defendant neither manufactured nor supplied) were replacement parts – such as gaskets or packing – replacing other components that Defendant did initially supply with its product (which asbestos litigants typically refer to as "original" component parts). In other instances, the component part at issue – usually external insulation – was applied to a product (such as an engine or boiler) after the product was purchased by the purchaser.

Plaintiff's claims against Defendant Pratt & Whitney are governed by Pennsylvania law.[6] The Court now considers whether and when, under Pennsylvania law, a product manufacturer is liable for injury caused by asbestos-containing component parts used with its product, but which it neither manufactured nor supplied.[7]

## II.  LEGAL STANDARD

Summary judgment is appropriate if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is

---

[6]   The parties have agreed that Pennsylvania substantive law applies. Therefore, this Court will apply Pennsylvania substantive law in deciding Defendant's motion. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); see also Guaranty Trust Co. v. York, 326 U.S. 99, 108 (1945).

[7]   By way of Order dated December 3, 2014, this Court solicited briefing from the parties regarding whether and how the Supreme Court of Pennsylvania's opinion in Tincher v. Omega Flex, Inc., 104 A.3d 328 (Pa. 2014), impacts Pennsylvania law (and, thus, this Court's ruling) on the issue.

"genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

## III. DISCUSSION

Defendant has moved for summary judgment arguing that, as a matter of law, it cannot be held liable for injuries caused by asbestos-containing component parts that it did not manufacture or supply, but which were used in connection with its products.[8] Plaintiff disagrees and contends that product manufacturers such as Defendant can be liable under existing Pennsylvania law because they have a duty to warn of hazards

---

[8] These products are often referred to in asbestos litigation as "aftermarket products" or "aftermarket components."

arising from the component parts used with their products – even though they did not manufacture or supply those component parts. The Court next examines the arguments and authorities advanced by the parties in further detail.

A.  Defendants' Arguments

Defendants[9] argue that they are entitled to summary judgment because they cannot be liable for products or component parts that they did not manufacture or supply. In support of this argument, Defendants rely upon three decisions from the Pennsylvania Superior Court:[10] Eckenrod v. GAF Corp.,[11] 375 Pa.

---

[9]     In an effort to place these issues in the general context of asbestos litigation, the Court will also discuss the issues and authorities raised by the parties in Rabovsky v. Air & Liquid Systems Corp., No. 2:10-cv-3202, and Mortimer v. A.O. Smith Corp., No. 2:13-cv-4169.

[10]     Defendant Pratt & Whitney cites also to three decisions of the Philadelphia Court of Common Pleas: Scarduzio v. DaimlerChrysler Corp., 2005 Phila. Ct. Com. Pl. LEXIS 540 (Dec. 6, 2005), and Mastrobuono v. General Motors Corp., 2005 Phila Ct. Com. Pl. LEXIS 353 (July 7, 2005), aff'd 2006 Pa. Super. LEXIS 801 (Apr. 24, 2006). Defendant Pratt & Whitney also cites Kolar v. Buffalo Pumps, Inc., 2010 WL 5312168, *45-49 (Pa. Com. Pl. Aug. 2, 2010). However, in predicting law of a given state (which frequently involves matters of policy), courts generally look to decisions of appellate courts in that state, rather than trial courts, unless there is an absence of appellate authority or some unique reason to consider a particular trial court decision.

[11]     Eckenrod was an asbestos case decided by the Pennsylvania Superior Court. In that decision, the Superior Court set forth the general statement of law that, "[i]n order for liability to attach in a products liability action,

Super. 187, 544 A.2d 50, 52-53 (Pa. Super. Ct. 1988); <u>Toth v.</u>

<u>Economy Forms Corp.,</u>[12] 391 Pa. Super. 383, 571 A.2d 420, 420 (Pa.

---

plaintiff must establish that the injuries were caused by a product of the particular manufacturer or supplier." 375 Pa. Super. at 190-91. Importantly, however, the decision did not address the "bare metal" issue and does not appear to have involved products for which the issue is relevant. For this reason, it is not directly relevant to the issue now before the Court and will, therefore, not be considered by the Court at any length in its survey of authorities pertinent to the issue.

Moreover, the Court notes that <u>Eckenrod</u> was decided almost twenty years ago – before the issue had been fully developed and briefed by the parties or considered by courts in Pennsylvania or elsewhere.

[12]   <u>Toth</u> involved an allegedly defective wooden plank used in a scaffolding system. In that case, the plaintiff sued the manufacturer of a scaffolding system after her husband fell to his death when the wooden plank, which had not been manufactured or supplied by the defendant but was used in its system, broke away. The Superior Court declined to hold the scaffolding system manufacturer strictly liable for the death because it had not supplied the plank used with its scaffolding system. 391 Pa. Super. at 388-89. The Court also noted that the defendant's failure to supply the wooden plank to be used with the scaffolding system was not a design defect. <u>Id.</u>

Defendant Crane Co. contends in <u>Rabovsky</u>, that <u>Toth</u> stands for the proposition that, under Pennsylvania law, "a manufacturer of a product is not liable for injuries caused by a dangerous product that is manufactured, designed, and supplied by others, even if the dangerous product is affixed to the manufacturer's product." (No. 2:10-cv-03202, ECF No. 114, Mot. at 7.) In <u>Mortimer</u>, Defendant Aurora Pumps summarizes this case as standing for the proposition that "product manufacturers cannot be held liable for defective component parts manufactured by a third party." (No. 2:13-cv-04169, ECF No. 318, Mot. at 10.)

Importantly, though, <u>Toth</u> was not an asbestos case. Moreover, the analysis therein pertained to strict liability claims only. (The plaintiffs in <u>Toth</u> attempted to set forth a negligence cause of action. However, the Court discounted plaintiff's particular theory of negligence (which had to do

9

Super. Ct. 1990); and Schaffner v. Aesys Technologies, LLC, 2010
WL 605275 (Pa. Super. Ct. Jan. 21, 2010).

B.   Plaintiffs' Arguments[13]

Plaintiffs contend that, under Pennsylvania law,
product manufacturers have a duty to warn of the known asbestos-
related hazards of component parts used with their products. In
support of this assertion, Plaintiffs rely upon Section 402A of
the Restatement (Second) of Torts,[14] Berkebile v. Brantly

---

with an alleged obligation of the product manufacturer to
provide field services pertaining to the scaffolding) and did
not squarely address whether or how a negligence cause of action
could lie against a product manufacturer. 391 Pa. Super. at
389.) As such, the case does not squarely address either the
"bare metal defense" as applied to an asbestos-containing
product or, more generally, the viability of a negligence cause
of action against a product manufacturer. For this reason, it is
not directly relevant to the issues now before the Court and
will, therefore, not be considered by the Court at any length in
its survey of authorities pertinent to the issue.

[13]   See footnote 9 herein.

[14]   In their initial briefs, none of the Defendants relied
upon Section 402A of the Restatement (Second) of Torts (or any
provision of the Restatement) in support of their position.
However, in reply to Plaintiff's submission addressing the
Pennsylvania Supreme Court's decision in Tincher, Defendant
Crane Co. asserts in Rabovsky, that Section 402A does not
support Plaintiff's position and, instead, "explicitly limits
the scope of strict liability claims to those entities 'engaged
in the business of selling' the alleged harm-causing product."
No. 2:10-cv-03202-ER, ECF No. 217 at 5.

Helicopter Corp.,[15] 462 Pa. 83, 337 A.2d 893, 898 (Pa. 1975)
(later abrogated as to certain other points of law), Chicano v.
General Electric Co., 2004 WL 2250990 (E.D. Pa. Oct. 5, 2004)
(O'Neill, J.), and In re Asbestos Products Liability Litig.
(Hoffeditz v. AM General, LLC), 2011 WL 5881008 (E.D. Pa. July
29, 2011) (Robreno, J.) (hereinafter "Hoffeditz").[16]

Plaintiffs assert that there is evidence that
Defendants (1) knew of the asbestos-related dangers of the

---

[15] Berkebile involved strict liability design defect
claims (including defective warning claims) brought against a
helicopter manufacturer after the plaintiff's husband was killed
in a crash while piloting the helicopter. Importantly, however,
Berkebile was not an asbestos case and did not involve component
parts that the defendant had not manufactured or supplied.
Moreover, in Berkebile, the Pennsylvania Supreme Court made
clear that the claims did not include negligence claims and were
instead strict liability claims, as permitted by Pennsylvania
law (at that time) and its adoption of Section 402A of the
Restatement (Second) of Torts. See id. at 897-902. As such, it
does not address the "bare metal defense" or the parameters of a
negligence cause of action against a product manufacturer. For
this reason, it is not directly relevant to the issues now
before the Court and will, therefore, not be considered at any
length in the survey of pertinent authorities herein.

[16] Plaintiff Schwartz also cited Berkowitz v. A.C. & S.,
Inc., 733 N.Y.S.2d 410, 288 A.D.2d 148, 149 (N.Y. App. (1st
Dept.) 2001), which was decided under New York law, and Braaten
v. Saberhagen Holdings, 137 Wn. App. 32, 46 (Wash. Ct. App.
2007), which was decided under Washington law and, at the time
of briefing, supported Plaintiff's position. The intermediate
appellate court's decision in Braaten was later reversed by the
Supreme Court of Washington. Although they were not decided
under Pennsylvania law, these cases address the "bare metal
defense" in the context of asbestos litigation and are,
therefore, considered in the Court's nationwide survey of the
law on this issue, set forth later herein.

asbestos-containing component parts at issue[17] (including

replacement parts such as gaskets and packing), which were used

in connection with their products and, (2) in some cases,

designed their products such that they could not be properly

used without the asbestos-containing components (such as

external insulation) that led to Plaintiffs' injuries – and that

Defendants therefore had a duty to warn of those hazards.[18]

C.    Manufacturer Liability Under Pennsylvania Law

The Supreme Court of Pennsylvania has never addressed

the issue of the so-called "bare metal defense" in the context

of asbestos litigation. Therefore, it will be necessary to

predict Pennsylvania state law on this issue in order to resolve

Defendant's motion. As this MDL Court sits in Pennsylvania, it

---

[17]    Plaintiffs contend that Toth, upon which Defendants
heavily rely, is distinguishable on this basis because the
plaintiff in Toth could not present evidence that the
manufacturer of the finished product (scaffolding) knew about
the defect in the component part at issue (a wooden plank that
the defendant neither manufactured nor supplied but which was
used with its scaffolding).

[18]    Plaintiff Schwartz argues that Pratt & Whitney is
liable for injuries arising from insulation used in connection
with its aircraft engines because (1) its engines (and/or
accompanying fuel lines and controls) required thermal
insulation to operate safely; (2) it knew that its engines
(and/or accompanying fuel lines and controls) would be insulated
with asbestos-containing insulation; and (3) it knew that
asbestos-containing products posed significant health risks,
including the possibility of mesothelioma.

is well-situated to predict Pennsylvania law on this issue.[19] In

doing so, the Court looks to relevant state precedents, dicta,

scholarly works, and other reliable sources. See, e.g., In re

Asbestos Products Liability Litigation (No. VI), 278 F.R.D. 126,

133 (E.D. Pa. 2011) (Robreno, J.) (setting forth methodology for

predicting Illinois state law in the absence of any precedent on

the issue from the Supreme Court of Illinois). It is axiomatic

that, in predicting the future course of state common law, "'a

federal court must be sensitive to the doctrinal trends of the

state whose law it applies.'" Charles Shaid of Pennsylvania,

Inc. v. George Hyman Const. Co., 947 F. Supp. 844, 852 (E.D. Pa.

1996) (Robreno, J.) (quoting Clark v. Modern Group Ltd., 9 F.3d

321, 327 (3d Cir. 1993)). With these principles in mind, the

Court examines various sources of authority that will inform its

prediction of Pennsylvania law regarding the so-called "bare

metal defense."

---

[19]     Frequently, where a given state's law has not squarely
addressed the issue of the "bare metal defense" – an issue of
policy – this MDL court has declined to predict that state's law
on the issue, reasoning that the transferor court (which is
generally a district court sitting in the state whose law is to
be applied) is better situated to make that prediction, as it is
more familiar with that state's law and policy.

## 1.   Restatement (Second) of Torts § 402A

The Supreme Court of Pennsylvania has adopted Section 402A of the Restatement (Second) of Torts, which provides, in pertinent part:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it **is expected to** and does reach the user or consumer **without substantial change** in the condition in which it is sold.

Restatement (Second) of Torts § 402A (1965) (first adopted by the Pennsylvania Supreme Court in Webb v. Zern, 422 Pa. 424, 220 A.2d 853, 854 (1966)) (emphasis added).

In order to apply the provisions of Section 402A, the Court must consider its applicability and construe the language contained therein. In addressing the issue presented by the so-called "bare metal defense," different courts have construed and applied Section 402A in different ways. Some courts have construed it to indicate that a manufacturer of a product (such as pumps, valves, boilers, condulets, or engines) is not liable for injury caused by – and has no duty to warn about hazards presented by – component parts used with its products (such as gaskets, packing, or external insulation) that it neither

14

manufactured nor supplied.[20] Other courts have considered Section 402A, yet have held that a product manufacturer can still potentially be liable for injuries arising from – and may have a duty to warn about dangers presented by – component parts used with its products, despite the fact that it neither manufactured nor supplied those component parts. Some of these courts specify that such potential liability would be premised on common law negligence (rather than strict liability),[21] while other courts have not been as clear.[22]

---

[20]     As discussed in greater detail later herein, these courts include the United States Court of Appeals for the Sixth Circuit and the Pennsylvania Superior Court. See Lindstrom v. A-C Product Liability Trust, 424 F.3d 488 (6th Cir. 2005); Schaffner v. Aesys Technologies, LLC, 2010 WL 605275 (Pa. Super. Ct. Jan. 21, 2010). Importantly, however, Schaffner was decided before the Pennsylvania Supreme Court's decision in Tincher v. Omega Flex, Inc., 104 A.3d 328 (Pa. 2014)).

[21]     As discussed in greater detail later herein, these courts include the Supreme Court of Washington and the Supreme Court of California. See Simonetta v. Viad Corporation, 165 Wash.2d 341, 197 P.3d 127 (Wash. 2008); Braaten v. Saberhagen Holdings, 165 Wash.2d 373, 198 P.3d 493 (Wash. 2008); O'Neil v. Crane Co., 53 Cal.4th 335, 135 Cal.Rptr.3d, 266 P.3d 987 (Cal. 2012). While both courts concluded that there was no common law duty to warn of hazards of components parts used with their products but which they did not manufacture or supply, each court acknowledged that it was necessary to reach this determination under an analysis separate from that under Section 402A.

[22]     As discussed in greater detail later herein, these courts include intermediate appellate courts in New York and the asbestos trial court in Pennsylvania. See Berkowitz v. A.C.&S., Inc., 733 N.Y.S.2d 410, 288 A.D.2d 148 (N.Y. App. (1st Dept.) 2001), and In re New York City Asbestos Litigation, – N.Y.S.2d – , 2014 WL 2972304, at *13 (N.Y. App. (1st Dept.) July 3, 2014);

While courts have not always clearly set forth the reasoning behind this determination, it appears that the difference turns in part on how the court construes four key aspects of Section 402A: (1) whether the court construes the provision to apply to negligence claims (in addition to strict liability claims), (2) how the court defines the "product" at issue, (3) how the court construes the "substantial change" provision of 402A, and/or (4) whether and how the court construes 402A to include the concept of "knowledge" or "foreseeability." In light of the prediction of Pennsylvania law made by this MDL Court herein,[23] it is not required to address

_____

Kolar v. Buffalo Pumps, Inc., 2010 WL 5312168 (Pa. Com. Pl. Aug. 2, 2010). These courts have considered Section 402A and, without specifically discussing common law negligence, have acknowledged circumstances in which a product manufacturer can be liable for injury from component parts they did not manufacture or supply, but which were used with their product. Kolar specifies that liability can arise where use of such a component part constitutes a "substantial change" to the manufacturer's product – a concept seemingly captured in Section 402A. Id. at *47. The New York cases discuss duty, knowledge, and foreseeability and, thus, seem to imply that liability is in common law negligence.

[23]     As explained further herein, in predicting Pennsylvania law on the issue, the Court (1) construes Section 402A to govern only strict liability claims (not negligence claims), (2) defines the "product" at issue to be the product with original component parts contained in the product at the time of supply (not replacement component parts or later-added external insulation), and (3) considers replacement of original asbestos-containing component parts with other asbestos-containing component parts to be a "substantial change" to a product, as a matter of law.

each of these aspects at length. However, for the purpose of providing context and setting forth illustration of the principles surrounding the "bare metal" issue and application of 402A by different courts considering the issue, the Court briefly addresses each of these factors in turn.

        a.     <u>Strict Liability vs. Negligence Under § 402A</u>

Of great significance to a court's determination of the "bare metal" issue is whether that court deems Section 402A to govern negligence claims (in addition to strict liability[24]

---

In light of these determinations, and in the context of asbestos litigation, the fourth factor (regarding construction of the provision with respect to "knowledge" or "foreseeability") need not be reached. Moreover, because the Court deems it applicable only to strict liability claims, it need not consider analyses of these aspects as would pertain to negligence law.

For these reasons, an in-depth analysis of all possible constructions of the provision is not necessary for purposes of considering and deciding the issue now before the Court.

[24] There are three types of strict product liability claims: defective design, defective manufacture, and defective warning. <u>See</u>, <u>e.g.</u>, <u>Phillips v. A-Best Prods. Co.</u>, 542 Pa. 124, 665 A.2d 1167, 1170 (Pa. 1995); <u>Simonetta v. Viad Corporation</u>, 165 Wash.2d 341, 355, 197 P.3d 127, 134 (Wash. 2008) (citing Prof. James A. Henderson, Jr. & Prof. Aaron D. Twerski, DOCTRINAL COLLAPSE IN PRODUCTS LIABILITY: THE EMPTY SHELL OF FAILURE TO WARN, 65 N.Y.U. L. Rev. 265, 271 (1990) (relying on comments h, i, j, and k to § 402A); <u>O'Neil v. Crane Co.</u>, 53 Cal.4th 335, 347, 266 P.3d 987, 994 (Cal. 2012); <u>Conner v. Alfa Laval, Inc.</u>, 842 F. Supp. 2d 791, 796 (E.D. Pa. Feb. 1, 2012) (Robreno, J.). Generally, to the extent that asbestos litigation involves strict liability claims, they are of the last type:

claims).[25] To the extent that a court deems 402A to govern both types of claims, it follows that the outcome on both causes of action would be the same.[26] To the extent that a court deems the provision applicable only to strict liability claims (as seems to have been anticipated by the drafters of the provision[27]), a court will have to perform a separate analysis as to the viability of a plaintiff's negligence cause of action, applying principles of common law under that jurisdiction's law.[28]

---

defective warning. Frequently, plaintiffs also assert separate common law claims for negligent failure to warn.

[25] Section 402A addresses strict liability. However, the first comment to it (comment "a") specifically states that nothing in the provision precludes negligence claims/theories of liability.

[26] It appears that this was the case in the Sixth Circuit's decision in Lindstrom v. A-C Product Liability Trust, 424 F.3d 488 (6th Cir. 2005), when adopting and applying to maritime products liability claims its earlier holdings in Stark v. Armstrong World Indus., 21 F. App'x 371 (6th Cir. Oct. 3, 2001). While the Stark court's analysis focused on that plaintiff's strict liability claims in the context of, inter alia, Section 402A (and mentioned his negligence claims only in passing), the Lindstrom court appears to have (implicitly) adopted the rationale of Stark for both negligence and strict liability claims. See Lindstrom, 424 F.3d at 492-99.

[27] See footnotes 25 and 49.

[28] The California Supreme Court and Washington Supreme Court have taken this approach. See O'Neil v. Crane Co., 53 Cal.4th 335, 135 Cal.Rptr.3d, 266 P.3d 987 (Cal. 2012); Simonetta v. Viad Corporation, 165 Wash.2d 341, 197 P.3d 127 (Wash. 2008); Braaten v. Saberhagen Holdings, 165 Wash.2d 373, 198 P.3d 493 (Wash. 2008).

Of significance for the issue now before the Court, the Pennsylvania Supreme Court just recently clarified in Tincher v. Omega Flex, Inc. that, under Pennsylvania law, Section 402A governs only strict liability claims, and that common law negligence claims are subject to a different standard and analysis.[29] 104 A.3d 328, 336, 345, 358, 381-83, 384 (Pa. 2014).

b.      Defining the "Product" at Issue

Whether Section 402A supports some version of the "bare metal defense" turns, in part, on how the term "product"

---

It appears that New York state courts have taken this approach without explicitly stating so. In Berkowitz v. A.C.&S., Inc., 733 N.Y.S.2d 410, 288 A.D.2d 148 (N.Y. App. (1st Dept.) 2001), and In re New York City Asbestos Litigation, – N.Y.S.2d – , 2014 WL 2972304, at *13 (N.Y. App. (1st Dept.) July 3, 2014), the Appellate Division permitted plaintiffs to proceed on claims pertaining to alleged failures to warn. In doing so, it discussed concepts of duty, knowledge, and foreseeability without ever citing or mentioning Section 402A of the Restatement (Second) of Torts. In fact, the Appellate Division distinguished several other cases which did rely upon Section 402A (including the federal district court's asbestos decision in Surre v. Foster Wheeler LLC, 831 F. Supp. 2d 797 (S.D.N.Y. 2011)). See 733 N.Y.S.2d at 412 (distinguishing Rastelli v. Goodyear Tire & Rubber Co., 79 N.Y.2d 289, 582 N.Y.S.2d 373, 591 N.E.2d 222 (1992)); 733 N.Y.S.2d at 190-91 (distinguishing, inter alia, Surre and Rastelli).

[29]     Pennsylvania law on this point was not clear prior to Tincher, which overruled Azaarello v. Black Brothers Co., 480 Pa. 547, 391 A.2d 1020 (1978), a long-standing decision that the Court noted had led subsequent courts to conclude that Pennsylvania did not even recognize a negligence cause of action against product manufacturers. See Tincher, 104 A.3d at 376.

is defined. For example if a valve or pump is considered to be one product and the component part (e.g., gasket or packing) is a separate product, then, under one possible construction of Section 402A, a valve or pump manufacturer need only warn of hazards associated with the valve or pump as placed into the stream of commerce (i.e., does not require warning about even the original gaskets and packing contained in the pumps or valves at the time the manufacturer placed it into the stream of commerce). The court has not located any decision in which a court has adopted this somewhat extreme approach. Instead, courts appear to consider that the original component parts are a part of the integrated product the pump or valve manufacturer places into the stream of commerce.[30]

Under another possible construction of Section 402A, a valve or pump manufacturer need only warn of hazards associated with (1) the valve as placed into the stream of commerce, which includes any (2) original gaskets and packing (or, as occurs

---

[30] As such (or perhaps in the alternative), a pump or valve manufacturer is also a "supplier" of the original component part, and therefore faces potential liability under Section 402A (e.g., for "defective warning" claims) as a supplier of the gaskets or packing it supplied with its pump or valve. (Kolar v. Buffalo Pumps, Inc. indicates that, under Pennsylvania law, such liability is as a "supplier." 2010 WL 5312168, at *46-47.) What is clear is that courts have consistently held product manufacturers liable for injury arising from the original asbestos-containing component parts contained in their products when they were placed into the stream of commerce.

occasionally, external insulation) supplied by the manufacturer

therewith – and it need not warn of the hazards of replacement

gaskets or packing (or external insulation supplied by another

entity) later used with the valves (because it neither

manufactured nor supplied those replacement gaskets or packing,

or the external insulation).[31] Rather, only the manufacturer and

---

[31]     This is the approach taken by the California Supreme
Court in O'Neil v. Crane Co., where it explained:

> Strict liability encompasses all injuries caused by a
> defective product, even those traceable to a defective
> component part that was supplied by another. [Citation
> omitted.] However, the reach of strict liability is
> not limitless. We have never held that strict
> liability extends to harm from entirely distinct
> products that the consumer can be expected to use
> with, or in, the defendant's nondefective product.

53 Cal.4th at 348 (internal cites omitted). In considering
potential liability for aftermarket component parts under a
common law negligence theory, it held that, "[t]he same policy
considerations that militate against imposing strict liability
in this situation apply with equal force in the context of
negligence." Id. at 366.

     This approach was also taken by the United States
Court of Appeals for the Sixth Circuit in Lindstrom v. A-C
Product Liability Trust, 424 F.3d at 495-97.

     Although a cursory reading of the Pennsylvania
Superior Court's decision in Schaffner v. Aesys Technologies,
LLC, suggests that it may have adopted this approach, the facts
of the case do not warrant reaching this conclusion, as there is
no evidence in the record that the products at issue (boilers)
contained (or were supplied with) any original asbestos
component parts. 2010 WL 605275 (Pa. Super. Ct. Jan. 21, 2010).

     In predicting Pennsylvania law regarding strict
liability claims, the MDL Court adopts this approach herein.

supplier of the replacement gasket or packing (or external insulation) can be strictly liable for failing to provide warnings about those aftermarket component parts.[32]

By contrast, if the product at issue is defined to be a "valve with gasket and/or packing" or "boiler with external insulation,"[33] then Section 402A can be construed to indicate that the valve or boiler manufacturer has a duty to warn not only of hazards associated with the valve and its original gasket and/or packing (or boiler with any external insulation supplied with it), but also any replacement gasket or packing or

---

[32] Of course, a duty to warn about these may still exist as a matter of common law, such that a court may conclude by way of separate analysis and separate cause of action (i.e., common law negligence) that a defendant can be liable in certain circumstances for failing to provide adequate warnings of the hazards associated with asbestos-containing aftermarket component parts used with its product, but which it neither manufactured nor supplied. This is the approach the MDL Court now predicts would be applied under Pennsylvania law.

[33] This is the approach taken by Judge O'Neill in Chicano v. General Electric Co., 2004 WL 2250990 (E.D. Pa. Oct. 5, 2004). The outcome and analysis of the New York Appellate Court in Berkowitz v. A.C.&S., Inc., 733 N.Y.S.2d 410, 288 A.D.2d 148 (N.Y. App. (1st Dept.) 2001), and In re New York City Asbestos Litigation, – N.Y.S.2d – , 2014 WL 2972304, at *13 (N.Y. App. (1st Dept.) July 3, 2014), suggest that it has also taken this approach; however, this is not clear, as neither decision references any provision or version of the Restatement of Torts and it is unclear whether the claims discussed sound in strict liability and/or negligence.

external insulation supplied by another entity and used with the boiler after sale.[34]

In short, whether or not a given state's law recognizes the so-called "bare metal defense" for which defendants argue is a matter determined largely by how that state defines the "product" at issue. As such, the determination is largely a matter of policy. For example, and to provide illustration, in applying Section 402A in Simonetta v. Viad Corporation, the Supreme Court of Washington determined that, "the completed product was the evaporator as delivered by Viad to the navy, sans [i.e., without] asbestos insulation." 165 Wash.2d 341, 362, 197 P.3d 127 (Wash. 2008). As such, it found that the evaporator manufacturer could face no strict liability for injury arising from the insulation. In contrast, in deciding Chicano v. General Electric Co., Judge O'Neill determined that "because the turbines cannot function properly or safely without thermal insulation[, t]he products from which Chicano inhaled asbestos fibers are properly understood to be the turbines covered with

---

[34] This assumes that replacing the gaskets and/or packing with other gaskets and/or packing does not constitute a "substantial change" to the "valve with gasket and/or packing" that was placed into the stream of commerce by the valve manufacturer. In this scenario, the Court has presumably determined (although it has not necessarily explicitly stated) that, as a matter of law, replacement of asbestos-containing gaskets and/or packing with other asbestos-containing gaskets and/or packing does not constitute a "substantial change" within the meaning of Section 402A.

asbestos-containing insulation, as fully functional units." 2004
WL 2250990, at *3. Based on this definition of the "product" at
issue, Judge O'Neill explained that, under Pennsylvania law[35]
regarding strict product liability, "there is at least a genuine
issue of material fact as to whether GE had a duty to warn of
the dangers of the asbestos-containing material that was used to
insulate its turbines" even though "GE's marine steam turbines
by themselves were not dangerous products" and "were shipped to
the Navy without thermal insulation." Id. at *7.

      c.      <u>"Substantial Change Doctrine" Under § 402A</u>

Whether or not Section 402A supports the "bare metal
defense" also turns, in part, on how the court construes the
"substantial change" provision of 402A(1)(b).[36] For example, even
if a court construes the product at issue to be a "valve" or
"boiler" (rather than, for example, a "valve with gasket and/or
packing" or "boiler with external insulation"), Section

---

[35]    Importantly, Judge O'Neill's decision in <u>Chicano</u> was
issued ten years prior to <u>Tincher</u>, at a time when it was
generally considered that Pennsylvania law recognized a sole
cause of action against product manufacturers that was somewhat
of a hybrid of strict liability and negligence.

[36]    Specifically, Section 402A imposes liability upon a
manufacturer where its product "is expected to and does reach
the user or consumer **without substantial change** in the condition
in which it is sold." Restatement (Second) of Torts § 402A
(1965) (emphasis added).

402A(1)(b) can be construed to impose liability on the valve or boiler manufacturer for aftermarket replacement gaskets and/or packing used in connection with its product, or aftermarket external insulation applied to its product, because the after-sale use of those component parts with its product did not constitute a "substantial change" to the valve or boiler as compared to the condition in which it was sold (and was an "expected" or "foreseeable" use of its product[37]). How a court determines whether there has been a "substantial change," as used in Section 402A(1)(b) is, in the first instance, a matter of policy.

For example, a court could decide that it is always up to the jury to decide whether use of a given aftermarket component part with a manufacturer's product constitutes a "substantial change" to the product the manufacturer placed into the stream of commerce.[38] By contrast, a court could decide that, as a matter of law,[39] replacing asbestos-containing gaskets

---

[37]    This separate requirement is discussed separately herein in the next section.

[38]    In this scenario, if the jury determined that use of the aftermarket component part was a "substantial change," then the product manufacturer would not be liable under Section 402A. By contrast, if the jury determined that such use was not a "substantial" change, it would then need to determine whether such use was "expected" or "foreseeable." See fns. 36 and 43.

[39]    As explained in Kolar v. Buffalo Pumps, Inc., "[w]hether the manufacturer could have foreseen alteration of

and/or packing provided by the valve or pump manufacturer with the valve or pump at the time it was placed into the stream of commerce (i.e., "original" asbestos-containing gaskets and/or packing) with other asbestos-containing gaskets and/or packing[40] (which it neither manufactured nor supplied) does not constitute a "substantial change" to the valve as placed into the stream of commerce.[41] Or, in the alternative, a court could decide that, as

---

its product may be resolved by the fact-finder unless inferences are so clear a court can say as a matter of law a reasonable manufacturer could not have foreseen the change." 2010 WL 5312168, at *47 (Pa. Com. Pl. Aug. 2, 2010). In Kolar, Judge Mazer Moss discussed the "substantial change doctrine" and held that, despite insufficient product identification evidence, a plaintiff exposed to asbestos from aftermarket component parts still could have proceeded to trial on a theory that the defendant product manufacturer could have foreseen alteration to its product (i.e., use with asbestos-containing aftermarket component parts) such that it would still be liable for injury from the aftermarket part. Id. Summary judgment was granted in favor of defendants, however, because the court found that, based on that particular evidentiary record, "plaintiff could not possibly prove by a preponderance of the evidence [that] defendants should have foreseen asbestos gaskets would be added to their pumps and traps." Id.

[40]    It is worth noting that a court would likely perform a separate analysis regarding aftermarket external insulation applied to a product, given that, in asbestos litigation, products are generally not supplied with original external insulation.

[41]    In this scenario, if the jury (or court) then deems it "expected" or "foreseeable" that asbestos-containing gaskets and/or packing would be replaced with other asbestos-containing gaskets and/or packing, then the valve manufacturer would be liable under Section 402A for the replacement gaskets and/or packing – even though it neither manufactured nor supplied them – a result contrary to the "bare metal defense" as recognized by Washington, California, and maritime law. See fns. 36 and 43.

a matter of law, such replacement of original component parts (and/or addition of a component part such as external insulation) always constitutes a "substantial change" to the manufacturer's product.[42]

### d. Knowledge and Foreseeability Under § 402A

Whether or not Section 402A supports some version of the "bare metal defense" also turns, in some scenarios, on whether and how the court construes the provision to include the concept of "knowledge" and/or "foreseeability." Because 402A(1)(b) employs the term "expected to," it can be construed to include liability for certain known or foreseeable circumstances surrounding the use of a manufacturer's product.[43]

---

This is the approach taken by Judge O'Neill in Chicano, where he determined that addition of aftermarket asbestos insulation to a turbine was not a substantial change, 2004 WL 2250990, at *10, and whether or not the defendant product manufacturer had a duty to warn turned in large part on "whether [the turbine manufacturer] could reasonably foresee that its turbines would be combined with asbestos-containing insulation." Id. at *6.

[42] See footnote 39 (regarding decision on this issue as a matter of law).

This is the approach adopted herein by the MDL Court in predicting Pennsylvania law on the issue.

[43] Specifically, Section 402A imposes liability upon a manufacturer where its product "**is expected to** and does reach the user or consumer without substantial change in the condition in which it is sold." Restatement (Second) of Torts § 402A (1965) (emphasis added).

By way of illustration, even if a court construes the product at issue to be a "valve" (rather than a "valve with gasket and/or packing"), 402A(1)(b) can be construed to impose liability on the valve manufacturer for replacement gaskets and/or packing used in connection with its product because the use of those replacement products with its product was "expected" (i.e., "known" and/or "foreseeable") – so long as the use of the replacement gaskets and/or packing was not a "substantial change" to the valve as compared to the condition in which it was sold.[44]

If a court takes this approach, it must decide whether the determination of what is "expected" (i.e., "known" and/or "foreseeable") is a question of fact and/or an issue of law. For example, a court could decide that it is always up to the jury to decide whether a valve manufacturer "expected" (i.e., "knew" and/or could "foresee") at the time it was placed into the stream of commerce that asbestos-containing replacement gaskets and/or packing would be used to replace the gaskets and/or packing it supplied with the valve (or that asbestos-containing external insulation would be used in conjunction with its

---

[44]    See footnotes 36 and 43 herein.

28

valve[45]). By contrast, a court could decide that, as a matter of

law, replacement of asbestos-containing gaskets and/or packing

with other asbestos-containing gaskets and/or packing was

necessarily "expected" by the defendant product manufacturer

(i.e., was "known" by and/or "foreseeable" to the product

manufacturer) such that the valve manufacturer would always face

liability for injury arising from the replacement gaskets and/or

---

[45]   It is worth noting that a court could make separate
and different determinations regarding external insulation than
it does for internal component parts such as gaskets and packing
– and that, for policy reasons, it may make sense to do so. For
example, as a practical matter, a pump manufacturer may be well-
situated to provide a warning regarding asbestos-containing
gaskets and packing because warnings on the pump will be visible
to a worker replacing those already-installed component parts
prior to completion of the work that leads to the asbestos
exposure. In contrast, a worker exposed to asbestos as a result
of removing external insulation from the outside of a pump would
not see a warning on the pump pertaining to the insulation until
after the asbestos exposure had already occurred (i.e., after
the insulation had already been disturbed and removed). As such,
a pump manufacture may not be particularly well-situated to
provide an insulation-related warning – and the insulation
manufacturer may be best-situated to provide that warning.

In contrast, the pump manufacturer is likely better-
situated than a gasket manufacturer to provide gasket-related
warnings, as it is difficult (if not impossible) for a gasket to
containing a warning that will be visible to its remover – and
still intact – prior to removal of that gasket. In light of the
fact that asbestos exposure from gaskets (and packing) generally
occurs during removal of those components – rather than during
installation – law requiring warning about those components only
by the component manufacturers may, as a practical matter, have
the unintended effect of yielding only ineffective warnings
while failing to require those warnings that would be effective.

packing (or external insulation) that it "expected" to be used with its valve, but which it neither manufactured nor supplied.[46]

Courts considering the issue in connection with a strict liability analysis surrounding Section 402A have taken different approaches.[47] In <u>Kolar v. Buffalo Pumps, Inc.</u>, Judge Mazer Moss made clear that a defendant may be held liable under the "substantial change doctrine" if the manufacturer could have foreseen alteration of its product. 2010 WL 5312168, at *4 (Pa. Com. Pl. Aug. 2, 2010). Similarly, in <u>Chicano</u>, Judge O'Neill determined, based upon then-existent Pennsylvania law regarding strict product liability that, "there is at least a genuine issue of material fact as to . . . whether [a turbine manufacturer] could reasonably foresee that its turbines would

---

[46]    <u>See</u> footnote 39.

It is based upon this same rationale that the MDL Court predicts herein that, under Pennsylvania law, a product manufacturer is liable in common law negligence (though not strict liability) for injury arising from asbestos-containing aftermarket component parts if it supplied its product with original asbestos-containing component parts of the type at issue.

[47]    In light of this Court's construction regarding the term "product" and the "substantial change" provision, as set forth in Section 402A, it is not necessary to reach the issue of foreseeability in connection with a strict product liability claim. It appears that the Sixth Circuit Court of Appeals, the Washington Supreme Court, and the Pennsylvania Superior Court (prior to <u>Tincher</u>) have taken this same approach, although none has explicitly considered the "substantial change" provision of Section 402A. <u>See</u> <u>Lindstrom</u>, <u>Stark</u>, <u>Simonetta</u>, <u>Braaten</u>, and <u>Schaffner</u>.

be combined with asbestos-containing insulation, which together constituted a defective product, absent appropriate warnings of the dangers of asbestos" – and, thus, whether the defendant could be liable for injury arising from aftermarket asbestos-containing external insulation. 2004 WL 2250990, at *7.[48]

In contrast, the California Supreme Court has cited policy reasons for declining to read into Section 402A any assignment of liability for injury arising from "expected" use of asbestos-containing aftermarket component parts. It explained in O'Neil v. Crane Co.:

> Plaintiffs here seek to expand these exceptions to make manufacturers strictly liable when it is foreseeable that their products will be used in conjunction with defective products or replacement parts made or sold by someone else. However, the foreseeability of harm, standing alone, is not a sufficient basis for imposing strict liability on the manufacturer of a nondefective product, or one whose arguably defective product does not actually cause harm. . . . Generally, foreseeability is relevant in a strict liability analysis to determine whether injury is likely to result from a potential use or misuse of a product. [Citation omitted.] That the defendant manufactured, sold, or supplied the injury-causing product is a separate and threshold requirement that

---

[48] Once again, the outcome and analysis of the New York Appellate Court in Berkowitz v. A.C.&S., Inc., 733 N.Y.S.2d 410, 288 A.D.2d 148 (N.Y. App. (1st Dept.) 2001), and In re New York City Asbestos Litigation, – N.Y.S.2d – , 2014 WL 2972304, at *13 (N.Y. App. (1st Dept.) July 3, 2014), suggest that it has also taken this approach; however, this is not clear because, as noted earlier herein, neither decision references any provision or version of the Restatement of Torts and it is unclear whether the claims discussed within them sound in strict liability and/or negligence.

must be independently established. Moreover, in strict
liability as in negligence, "foreseeability alone is
not sufficient to create an independent tort duty."
[Citations omitted.]

.        .        .

The question whether to apply strict liability in
a new setting is largely determined by the policies
underlying the doctrine. [Citation omitted.] "[T]he
strict liability doctrine derives from judicially
perceived public policy considerations and therefore
should not be expanded beyond the purview of these
policies." [Citation omitted.] The conclusion we reach
here is most consistent with the policies the strict
liability doctrine serves. Although "an important goal
of strict liability is to spread the risks and costs
of injury to those most able to bear them" [citation
omitted], "it was never the intention of the drafters
of the doctrine to make the manufacturer or
distributor the insurer of the safety of their
products. It was never their intention to impose
absolute liability." [Citation omitted.]

53 Cal.4th 335, 362-63, 266 P.3d 987 (Cal. 2012) (citations

omitted).

Having examined the provisions of Section 402A of the

Restatement (Second) of Torts, whose continuing applicability

was confirmed by Tincher, the Court next considers the broader

issue of social policy in Pennsylvania.

2.   Pennsylvania Social Policy

In Davis v. Berwind Corporation, 547 Pa. 260, 690 A.2d

186 (Pa. 1997), the Pennsylvania Supreme Court wrote:

Section 402A [of the Restatement (Second) of
Torts] reflects the social policy that a seller or
manufacturer is best able to shoulder the costs and to

32

administer the risks involved when a product is released into the stream of commerce. Having derived a benefit from engaging in business, manufacturers and sellers are particularly able to allocate the losses incurred through costs increases and insurance. Walton v. Avco Corporation, 530 Pa. 568, 575, 610 A.2d 454, 458 (1992).

Nevertheless, it is not the purpose of § 402 to impose absolute liability. A manufacturer is a guarantor of its product, not an insurer. See Azzarello v. Black Brothers Co., Inc., 480 Pa. 547, 553, 391 A.2d 1020, 1023-24 (1978). To recover under § 402A, a plaintiff must establish that the product was defective, that the defect was a proximate cause of the plaintiff's injuries, and that the defect causing the injury existed at the time the product left the seller's hands. Berkebile v. Brantly Helicopter Corporation, 462 Pa. 83, 93-94, 337 A.2d 893, 899 (1975). The seller is not liable if a safe product is made unsafe by subsequent changes. Id. Where the product has reached the user or consumer with substantial change, the question becomes whether the manufacturer could have reasonably expected or foreseen such an alteration of its product. Eck v. Powermatic Houdaille, 364 Pa. Super. 178, 527 A.2d 1012 (1987).

547 Pa. at 266-67, 690 A.2d at 189-90.

Significantly, however, Section 402A of the Restatement (Second) of Torts, which was discussed in Davis, is a provision that deals specifically with strict liability.[49] It does not address the parameters for a negligence claim (if any)

---

[49]     Within the outline structure of the Restatement (Second) of Torts, the provision appears under the following headers:

Division Two. Negligence
        Chapter 14. Liability of Persons Supplying
                Chattels for the Use of Others
            Topic 5. **Strict Liability**

Restatement (Second) of Torts (1965) (emphasis added).

against product manufacturers.[50] The United States Court of Appeals for the Third Circuit recently noted the uncertainty about this issue under Pennsylvania law, when it addressed apparent inconsistencies in the decisions of the Pennsylvania Supreme Court regarding its policies on strict liability and negligence claims against product manufacturers. In its opinion in Covell v. Bell Sports, Inc., 651 F.3d 357 (3d Cir. 2011), the Third Circuit summarized relevant precedent of the Pennsylvania Supreme Court, as follows:

> In past products liability cases, the Supreme Court of Pennsylvania has looked to section 402A of the Restatement (Second) of Torts. E.g., Webb v. Zern, 422 Pa. 424, 220 A.2d 853, 854 (1966) ("We hereby adopt the foregoing language [of § 402A] as the law of Pennsylvania."). Section 402A makes sellers liable for harm caused to consumers by unreasonably dangerous products, even if the seller exercised reasonable care[.]
>
> .          .          .
>
> **Section 402A thus creates a strict liability regime by insulating products liability cases from negligence concepts. See id. § 402A(2)(a); Azzarello v. Black Bros. Co., 480 Pa. 547, 391 A.2d 1020, 1025-1026 (1978)** (charging courts to avoid negligence concepts when instructing a jury pursuant to § 402A).

---

[50]    Although Section 402A addresses strict liability, the first comment to it (comment "a") specifically states that nothing in the provision precludes negligence claims/theories of liability. However, as explained further herein, until very recently, it was accepted by many in the bar and judiciary that Pennsylvania law did not recognize a negligence cause of action against a product manufacturer.

**During the past 40 years, however, the Supreme Court of Pennsylvania has repeatedly addressed confusion arising from a core conflict in the structure of section 402A itself**: Section 402A instructs courts to ignore evidence that the seller "exercised all possible care in the preparation and sale of his product," § 402A(2)(a), yet imposes liability only for products that are "unreasonably dangerous," § 402A(1). In many cases it is difficult or impossible to determine whether a product is "unreasonably dangerous" to consumers without reference to evidence that the seller did or did not exercise "care in the preparation" of the product. See Schmidt v. Boardman Co., 11 A.3d 924, 940 (Pa. 2011) ("This no-negligence-in-strict-liability rubric has resulted in material ambiguities and inconsistency in Pennsylvania's procedure."); see also Phillips v. Cricket Lighters, 576 Pa. 644, 841 A.2d 1000, 1015–1016 (2003) (Saylor, J., dissenting).

Nonetheless, the Supreme Court of Pennsylvania has endeavored to segregate strict liability's "product-oriented" analysis from the "conduct-oriented" analysis of negligence. Phillips, 841 A.2d at 1006 ("[W]e have remained steadfast in our proclamations that negligence concepts should not be imported into strict liability law ..."). In so doing, **Pennsylvania's high court has stated repeatedly that negligence concepts have no place in products liability. E.g., id.; Azzarello, 391 A.2d at 1025–1026. That endeavor has not always been successful, see Davis v. Berwind Corp., 547 Pa. 260, 690 A.2d 186, 190 (1997)** (holding that if a "product has reached the user or consumer with substantial change," liability depends upon "whether the manufacturer could have reasonably expected or foreseen such an alteration of its product.") (emphasis added), nor has it been uniformly embraced by the Justices of that Court, see Schmidt, 11 A.3d at 940 (disapproving of Pennsylvania's "almost unfathomable approach to products litigation") (quotation omitted).

651 F.3d at 360-62 (emphasis added).

Shortly after this decision from the Third Circuit Court of Appeals, the Pennsylvania Supreme Court again addressed the issue of product manufacturer liability under Pennsylvania

law. In <u>Tincher v. Omega Flex, Inc.</u>, 104 A.3d 328 (Pa. 2014), it confirmed that Pennsylvania will continue to follow the Restatement (Second) of Torts on this issue,[51] but clarified that Pennsylvania law recognizes both strict liability and negligence claims against product manufacturers.[52] In doing so, however, it focused primarily on the parameters of strict product liability claims.

In addressing policy considerations in <u>Tincher</u>, the Pennsylvania Supreme Court noted goals of (1) imposing financial liability on those entities best situated to prevent harm from products,[53] and (2) providing punishment and deterrence of future

---

[51]    In <u>Tincher</u>, the Pennsylvania Supreme Court explicitly declined to adopt the Restatement (Third) of Torts on this issue and decided instead to continue applying the Restatement (Second) of Torts. 104 A.3d at 395-99.

[52]    Specifically, the Pennsylvania Supreme Court overruled <u>Azaarello v. Black Brothers Co.</u>, 480 Pa. 547, 391 A.2d 1020 (1978), a long-standing decision that the Court noted had led subsequent courts to conclude that Pennsylvania does not recognize a negligence cause of action against product manufacturers. <u>See</u> <u>Tincher</u>, 104 A.3d at 376. The Pennsylvania Supreme Court made clear in <u>Tincher</u> that there are two distinct causes of action that may be brought against product manufacturers: (1) strict product liability and (2) negligence. <u>See</u> <u>id.</u> at 383-84.

[53]    As a source of authority for this policy consideration, the Pennsylvania Supreme Court cited <u>Excavation Tech., Inc. v. Columbia Gas Co. of Pa.</u>, 604 Pa. 50, 985 A.2d 840, 844 (2009). 104 A.3d at 404.

misconduct for those entities "guilty" of creating those harms.[54]

Perhaps indicating the relative significance of a third factor,

the Court reiterated repeatedly the goal of (3) consumer

protection and compensation.[55]  The Court indicated in its

explanations that the policy reasons behind the strict liability

and negligence concepts overlap.[56] In doing so, however, the

Court noted that the standard for establishing a strict

liability claim was specifically designed to be more easily

satisfied than that for a negligence claim. See 104 A.3d at 364,

401.

    After looking at courts' construction of Section 402A

and Pennsylvania's statements on social policy, the Court next

---

[54]   For this consideration, the Pennsylvania Supreme Court
cited Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal,
Inc., 492 U.S. 257, 275 n.20, 109 S. Ct. 2909, 106 L.Ed.2d 219
(1989), and Gary T. Schwartz, MIXED THEORIES OF TORT LAW:
AFFIRMING BOTH DETERRENCE AND CORRECTIVE JUSTICE, 75 Tex. L.
Rev. 1801 (1997). 104 A.3d at 404.

[55]   104 A.3d at 364, 369, 381 n.18, 382-84, 387-91, and
404. Specific authorities cited for this proposition include:
Ash v. Continental Ins. Co., 593 Pa. 523, 932 A.2d 877, 882
(2007); Scampone v. Highland Park Care Center, LLC, 618 Pa. 363,
57 A.3d 582, 604-05 (2012); Excavation Tech., 604 Pa. 50, 985
A.2d at 844; Trosky v. Civil Serv. Comm'n, 539 Pa. 356, 652 A.2d
813, 817 (1995)(quoting RESTATEMENT (SECOND) OF TORTS § 901,
cmt. a (1979)); Browning-Ferris Indus. of Vermont, Inc., 492
U.S. at 275 n.20, 109 S. Ct. 2909; and Schwartz, MIXED THEORIES
OF TORT LAW: AFFIRMING BOTH DETERRENCE AND CORRECTIVE JUSTICE,
75 Tex. L. Rev. 1801. 104 A.3d at 404.

[56]   104 A.3d at 401-02.

considers more broadly the doctrinal trends surrounding the so-called "bare metal defense" nationwide.

### 3.   Doctrinal Trends

Appellate courts to have considered the issue of the "bare metal defense" in the context of asbestos litigation have reached different results. Some courts have determined that a manufacturer has no liability for – and no duty to warn about – hazards associated with products or component parts that it did not manufacture or supply. Recently, after a review of caselaw on the issue nationwide, this Court confirmed in Conner v. Alfa Laval, Inc., that maritime law recognizes the "bare metal defense," such that a manufacturer has no liability for – and no duty to warn about – component parts or insulation used in connection with its product(s), but which it did not manufacture or supply. 842 F. Supp. 2d 791, 793 n.2 (E.D. Pa. Feb. 1, 2012) (Robreno, J.). In doing so, it considered and applied the holding of the United States Court of Appeals for the Sixth Circuit, which had already addressed the issue under maritime law, and which was consistent with the holdings of the Washington Supreme Court, and the California Supreme Court, each of which considered and ruled in favor of recognition of the "bare metal defense" in an asbestos action. See Lindstrom v. A-C Product Liability Trust, 424 F.3d 488 (6th Cir. 2005) (applying

maritime law); <u>Simonetta v. Viad Corporation</u>, 165 Wash.2d 341,

197 P.3d 127 (Wash. 2008); <u>Braaten v. Saberhagen Holdings</u>, 165

Wash.2d 373, 198 P.3d 493 (Wash. 2008); <u>O'Neil v. Crane Co.</u>, 53

Cal.4th 335, 266 P.3d 987 (Cal. 2012).[57] The holdings of the

courts in these cases generally foreclose all potential product

liability for asbestos-containing component parts not

manufactured or supplied by a product manufacturer – whether

sounding in strict liability or negligence.[58]

---

[57] The issue is also currently on appeal in Maryland. <u>See May v. Air & Liquid Systems Corp.</u>, 219 Md. App. 424, 100 A.3d 1284 (Md. App. Oct. 3, 2014), <u>cert. granted</u>, 441 Md. 217, 107 A.3d 1141 (Md. Jan. 23, 2015). At present, there are two decisions from appellate courts in Maryland that were decided in the context of asbestos litigation and which rule on the issue in favor of product manufacturer defendants. <u>May</u>, 219 Md. App. 424, 100 A.3d 1284 (involving asbestos-containing replacement gaskets and packing used with pumps and valves aboard ships). <u>Ford Motor Co. v. Wood</u>, 119 Md. App. 1, 703 A.2d 1315 (Md. App. 1998), <u>cert. denied</u>, 349 Md. 494, 709 A.2d 139 (Md. 1998) (involving asbestos-containing replacement brakes used with motor vehicles manufactured by Ford Motor Company). Because the issue is on appeal, the Court has not considered Maryland state law as falling on one side of the issue or the other.

       (Although it is not clear from the decision how the choice of law was determined, the Court notes that <u>May</u> appears to apply Maryland state law (rather than maritime law) to claims arising from exposure that occurred aboard ships. It remains to be seen whether this issue is considered upon appeal. If <u>May</u> is ultimately decided under maritime law, then it would appear that <u>Wood</u> will continue to be the governing law in asbestos cases decided under Maryland law.)

[58] It is worth noting, however, that, perhaps adding to the confusion and/or lack of consensus surrounding the issue of the so-called "bare metal defense," even <u>O'Neil</u> – which is generally considered to be a clear recognition of the defense - contains indications of potential exceptions to the general

rule. Although O'Neil held that pump and valve manufacturers
cannot be liable for – and have no duty to warn about – external
insulation or replacement gaskets and packing that they did not
manufacture or supply but which were used with their valves and
pumps, it also (1) stated:

> A stronger argument for liability might be made
> in the case of a product that required the use of a
> defective part in order to operate. In such a case,
> the finished product would inevitably incorporate a
> defect. One could argue that replacement of the
> original defective part with an identically defective
> one supplied by another manufacturer would not break
> the chain of causation. Similarly, if the product
> manufacturer specified or required the use of a
> defective replacement part, a stronger case could be
> made that the manufacturer's failure to warn was a
> proximate cause of resulting injury. In both contexts,
> however, the policy rationales against imposing
> liability on a manufacturer for a defective part it
> did not produce or supply would remain. (See post, 135
> Cal. Rptr. 3d at pp. 310–312, 266 P.3d at pp. 1006–
> 1007.) These difficult questions are not presented in
> the case before us, and we express no opinion on their
> appropriate resolution.

53 Cal.4th at 350 n.6; (2) acknowledged that, under California
law, there are, "limited circumstances under which liability for
failure to warn could extend to injuries caused by a
'generically identical' product with the same risks as the
manufacturer's product," 53 Cal. 4th at 352 n.7; and (3) even
explicitly held (without explanation or discussion as to the
exceptions) that "a product manufacturer may not be held liable
in strict liability or negligence for harm caused by another
manufacturer's product **unless the defendant's own product
contributed substantially to the harm, or the defendant
participated substantially in creating a harmful combined use of
the products**." (emphasis added). 53 Cal.4th at 342. See also id.
at 309.

The O'Neil court based its decision at least in part
on the factual determinations it made that (1):

> [T]he normal operation of defendants' pumps and
> valves did not inevitably cause the release of
> asbestos dust. This is true even if 'normal operation'

40

In contrast, appellate courts in New York have held that, under at least some circumstances, a product manufacturer can be liable for asbestos-containing component parts used with its product(s), but which it did not manufacture or supply. In Berkowitz v. A.C.&S., Inc., 733 N.Y.S.2d 410, 288 A.D.2d 148 (N.Y. App. (1st Dept.) 2001), a New York Appellate Division court held that a pump manufacturer could be held liable for injury arising from asbestos-containing insulation manufactured and installed by third parties, where there was evidence that the manufacturer knew that insulation, were it to be used on the pump, would be made of asbestos.[59]

_____

is defined broadly to include the dusty activities of routine repair and maintenance, because the evidence did not establish that defendants' products needed asbestos-containing components or insulation to function properly. It was the Navy that decided to apply asbestos-containing thermal insulation to defendants' products and to replace worn gaskets and packing with asbestos-containing components.

Id. at 361, and (2) "Defendants' pumps and valves were not 'necessarily' used with asbestos components, and danger did not result from the use of these products 'together.' Id. Because reasonable courts (or jurists) could disagree as to this determination, and because differing evidentiary records could also yield different determinations, it is not crystal clear that California recognizes the so-called "bare metal defense" in all scenarios.

[59]   Several recent trial court decisions from federal courts in New York have also held that a product manufacturer can be held liable for injury from a third-party-produced asbestos-containing component part used with its product if the defendant intended or knew that such asbestos components would be used with its products. Curry v. American Standard, No. 7:08-

The issue was again considered more recently by a New York Appellate Division court in In re New York City Asbestos Litigation, – N.Y.S.2d – , 2014 WL 2972304, at *13 (N.Y. App. (1st Dept.) July 3, 2014). In this decision, the court considered numerous issues on appeal after a jury verdict in favor of numerous defendants, including a valve manufacturer, which challenged the trial court's use of the word "foreseeability" in its instructions to the jury. The Appellate Division upheld the verdict and found that, while "mere foreseeability is not sufficient," it remains that "[t]here is a place for the notion of foreseeability in failure to warn cases

10228 (S.D.N.Y. Dec. 6, 2010); Gitto v. American Standard, No. 7:07-04771, 2010 WL 8752912 (S.D.N.Y. Dec. 7, 2010); Surre v. Foster Wheeler LLC, 831 F. Supp. 2d 797 (S.D.N.Y. 2011). Each of these cases involved the same valve manufacturer defendant and determined that, if "[the defendant] meant its products to be used with asbestos-containing components or knew that its products would be used with such components, the company remains potentially liable for injuries resulting from those third-party manufactured and installed components." Curry, slip op. at 3; Gitto, slip op. at 3. The district court explained in Gitto, "[t]he Court thus finds that a manufacturer's liability for third-party produced component parts must be determined by the degree to which injury from the component parts is foreseeable to the manufacturer." 2010 WL 8752912, at *2. Relying in part on comment "h" to the Restatement (Second) of Torts, Surre clarified further that a "manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known." 831 F. Supp. 2d at 800. The Surre court clarified that this could include warning about hazards of third-party-produced component parts used with its products if, for example, the product manufacturer knew its product would be used with hazardous component parts, such as where use of such hazardous component part is necessary for the product to function. Id. at 801.

where, as here, the manufacturer of an otherwise safe product purposely promotes the use of that product with components manufactured by others that it knows not to be safe." Id. In doing so, it explicitly rejected the valve manufacturer's assertion of the "component parts doctrine."[60] Id.

In addition, the Supreme Court of Washington appears to have retreated somewhat from its earlier adoption of the so-called "bare metal defense" in Simonetta and Braaten. Without reversing those decisions, it distinguished the facts in Macias v. Saberhagen Holdings, Inc., 175 Wash.2d 402, 282 P.3d 1069 (Wash. 2012), holding that a product manufacturer can at least sometimes be liable for failure to warn of the hazards of asbestos exposure that necessarily occurs as a result of the intended use of the product for the purpose for which it was designed – even if the product itself did not contain asbestos when manufactured and supplied, and the asbestos was released from another manufacturer's product.[61] Macias involved asbestos

_____

[60]    Although the terminology is not always used consistently, the "component parts doctrine" asserts the same (or, in large part, the same) theory of non-liability as does the "bare metal defense."

[61]    The Supreme Court of Washington explained that all claims arising from asbestos exposure after a certain date (July 26, 1981) were governed by the state's product liability statute (which subsumed any common law negligence claims), but clarified that it had determined that the statute was intended to carry forth the principles of product liability (strict liability and

exposure arising from the plaintiff's cleaning of a respirator,
which had accumulated asbestos dust released from other
asbestos-containing products at a shipyard. In its decision, the
Washington Supreme Court explained:

> In <u>Simonetta</u> and <u>Braaten</u>, the defendants were
> manufacturers of an evaporator, pumps, and valves that
> were installed on Navy ships. <u>Simonetta</u>, 165 Wash.2d
> at 346, 197 P.3d 127; <u>Braaten</u>, 165 Wash.2d at 381, 198
> P.3d 493. After these products were installed they
> were encased in asbestos insulating materials that the
> Navy applied to the equipment on its ships. <u>Simonetta</u>,
> 165 Wash.2d at 346, 197 P.3d 127; <u>Braaten</u>, 165 Wash.2d
> at 381, 198 P.3d 493. When the defendants' products
> were subjected to routine maintenance or replacement
> parts were installed, workers broke through the
> insulation in order to service the equipment or
> replace parts. <u>Simonetta</u>, 165 Wash.2d at 346, 197 P.3d
> 127; <u>Braaten</u>, 165 Wash.2d at 381, 198 P.3d 493. The
> plaintiffs were exposed to asbestos during such
> maintenance and developed lung cancer and
> mesothelioma. They sued the manufacturers, arguing
> that the manufacturers had a duty to warn of the
> danger of exposure to asbestos that occurred during
> maintenance of their products.
>
> Applying the common law, we held that the
> manufacturers were not in the chain of distribution of
> the asbestos insulating products and therefore had no
> duty to warn of the danger of exposure to asbestos
> during servicing, and it makes no difference whether
> the manufacturers knew that their products would be
> used in conjunction with asbestos insulation.
> <u>Simonetta</u>, 165 Wash.2d at 352–55 (negligence), 355,
> 357–58 (strict liability), 197 P.3d 127; <u>Braaten</u>, 165
> Wash.2d at 385, 389-90 (strict liability), 390–91
> (negligence), 198 P.3d 493.
>
> **Critically, for present purposes, the products
> involved in the <u>Simonetta</u> and <u>Braaten</u> cases did not
> require that asbestos be used in conjunction with**

---

negligence) that existed prior to enactment of the statute. 175
Wash.2d at 408-10.

**their products, nor were they specifically designed to be used with asbestos. Nor were those products designed as equipment that by its very nature would necessarily involve exposure to asbestos.**

**Unlike the valves, pumps, and evaporator in** <u>**Simonetta**</u> **and** <u>**Braaten**</u>**, which only happened to be insulated by asbestos products because the Navy chose to insulate the equipment on its ships with asbestos products, the respirators at issue here were specifically designed to and intended to filter contaminants from the air breathed by the wearer, including asbestos,** welding fumes, paint fumes, and dust. Indeed, filtering out such contaminants, including asbestos, is the exact reason that the respirators were used; removing asbestos and other contaminants was the very function for which the respirators were intended. **They were also designed to be reused in contaminated environments, and thus the contaminants removed from the air and present in concentrated amounts in the respirators had to be removed so the respirator could be reused.** Integral to reuse, the respirators had to be safely cleaned of the contaminants from the last use, and prior to this cleaning, they had to be safely handled.

**In short, the very purpose of the respirators would, of necessity, lead to high concentrations of asbestos (and/or other contaminants) in them, and in order to reuse them as they were intended to be reused, this asbestos had to be removed.**

Viewing the facts and the reasonable inferences from the facts in the plaintiffs' favor, as we must, the respirator manufacturers manufactured the very products that posed the risk to Mr. Macias of asbestos exposure. They were clearly in the chain of distribution of these products — **respirators that necessarily and purposefully accumulated asbestos in them when they functioned exactly as they were planned to function. It does not matter that the respirator manufacturers were not in the chain of distribution of products containing asbestos when manufactured.**

By comparison, if, as a result of a failure to instruct on how to properly use a respirator, a wearer of the device was exposed to the very contaminants

that the respirator would have filtered out had the wearer been properly advised on use, there would be no doubt that the respirator manufacturer would be found to be in the chain of distribution of the allegedly unsafe product. There is no meaningful difference in this case. **Cleaning the respirators was required for their reuse. Whether during actual use or preparation for reuse, the inherent danger arises because of the nature and use of the respirator itself.**

175 Wash.2d at 414-16 (emphasis added). Because, as noted by the Supreme Court of Washington in Macias, the facts considered in Simonetta and Braaten involved external insulation (rather than an internal component part), it is not entirely clear from the rationale set forth in Macias whether and how a product manufacturer (such as a valve or pump manufacturer) would be liable under Washington law for internal component parts (such as replacement gaskets and packing) that it did not manufacture or supply that are used in connection with its product.

In short, having reviewed the appellate authority nationwide on this issue, it appears there is no clear majority rule – and that courts permitting some liability on the part of product manufacturers for injury from other entities' component parts utilize different rules and rationales for doing so.[62]

---

[62]   The issue was also considered recently in the context of asbestos litigation by an appellate court in New Jersey. See Hughes v. A.W. Chesterton, 435 N.J. Super. 326, 38 A.3d 179 (N.J. Super. (App. Div.) Apr. 23, 2014). In Hughes, the Court held that a defendant pump manufacturer had a duty to warn about hazards of asbestos in replacement gaskets and packing used with its pumps but not manufactured or supplied by it. 435 N.J.

### 4. Asbestos-Related Pennsylvania Authority

There are four cases directly addressing the issue of the "bare metal defense" under Pennsylvania law and in the context of asbestos litigation, which the Court now considers (in chronological order):

#### a. Chicano v. General Electric Co.

Judge O'Neill first considered the issue under Pennsylvania law in 2004 in Chicano v. General Electric Co., 2004 WL 2250990 (E.D. Pa. Oct. 5, 2004). Chicano involved strict liability claims (for an alleged defective warning) brought against a turbine manufacturer when the plaintiff was injured by asbestos-containing insulation used with its turbines. It was undisputed that the defendant did not manufacture or supply the insulation at issue, which was applied externally to its turbines after sale. By way of motion for summary judgment, the

---

Super. at 341-43. However, the Court then went on to conclude that the defendant pump manufacturer was not liable in strict liability for asbestos exposure arising from such replacement gaskets and packing – and was not liable in negligence because New Jersey law has made clear that failure to warn claims are best governed by strict liability (rather than negligence) theories of liability (a result seemingly contrary to the court's holding earlier in the decision). Id. at 346-47. As such, it is not clear to this MDL Court how the law in New Jersey is applied on this issue. For this reason, the Court has not considered this case as falling on one side of the issue or the other.

turbine manufacturer asserted the so-called "bare metal defense."

Judge O'Neill denied summary judgment. He explained that there was "a genuine issue of material fact as to whether [the defendant turbine manufacturer] had a duty to warn of the dangers of the asbestos-containing material that was used to insulate its turbines," and noted that this was, in part, because there was a fact question for the jury as to "whether [the defendant] could reasonably foresee that its turbines would be combined with asbestos-containing insulation, which together constituted a defective product, absent appropriate warnings of the dangers of asbestos." 2004 WL 2250990 at *6.

In reasoning through his decision, Judge O'Neill considered numerous cases from the state and federal courts of Pennsylvania, recognized that Pennsylvania has adopted Section 402A of the Restatement (Second) of Torts, and ultimately noted that, under then-existent Pennsylvania law pertaining to strict liability claims, "[p]articular emphasis has been placed on the foreseeability inquiry." Id. His decision was based, in large part, on Azzarello v. Black Bros. Co., 480 Pa. 547, 391 A.2d 1020 (Pa. 1978) (recently overruled by Tincher v. Omega Flex, Inc., 104 A.3d 328 (Pa. 2014)).

b.  Schaffner v. Aesys Technologies, LLC

Several years later, in 2010, the Pennsylvania
Superior Court addressed the issue in Schaffner v. Aesys
Technologies, LLC, 2010 WL 605275 (Pa. Super. Ct. Jan. 21,
2010).[63] Schaffner was an asbestos case in which a boiler
manufacturer asserted the so-called "bare metal defense" when
facing strict liability defective warning claims for injuries
arising from aftermarket asbestos-containing external insulation
used in connection with its boilers. Noting that the plaintiff
had failed to cite a Pennsylvania asbestos case rejecting the
"bare metal defense," the Schaffner court reviewed Section 402A
of the Restatement (Second) of Torts (which it noted had been
adopted by the Pennsylvania Supreme Court) and then looked
outside of Pennsylvania, whereupon it adopted the holdings of
courts deciding the issue under maritime, Washington, and
California law, which it determined to be the nationwide
"majority rule" at the time, and which it deemed consistent with
the holding of Toth (a case which did not involve asbestos

---

[63]     Schaffner was designated as a non-precedential
decision. While the Pennsylvania rules prohibit the Pennsylvania
state courts from citing unpublished (or non-precedential)
opinions, such prohibition does not apply to federal courts.
While an unpublished opinion of a Pennsylvania state court
cannot be taken as stating Pennsylvania law, and therefore has
no precedential value, the Court is nonetheless at liberty to
rely upon it as persuasive authority regarding the thoughts and
opinions of learned Pennsylvania jurists.

component parts).[64] In deciding that, under the rationales set
forth under maritime, Washington, and California law, the boiler
manufacturer defendant could not be liable for injury caused by
the aftermarket insulation used with its boilers, it explained:

> [A] manufacturer cannot be held liable under theories
> of strict liability or failure to warn for a product
> it neither manufactured nor supplied. Appellant's
> evidence unequivocally shows that [defendant] neither
> manufactured nor supplied the asbestos components used
> with its boilers; the evidence further shows that non-
> asbestos containing components could also be used[65] for

---

[64]     Specifically, the Superior Court cited to Lindstrom,
Simonetta, Braaten, and the intermediate appellate court
decision in Taylor v. Elliott Turbomachinery Co., 171 Cal. App.
4th 564, 90 Cal. Rptr. 3d 414 (2009) (one of a pair of companion
cases leading to the California Supreme Court's decision in
O'Neil). It explained that it found these cases "instructive as
they, in the context of asbestos litigation, support the holding
in Toth, that a manufacturer cannot be held liable under
theories of strict liability or failure to warn for a product it
neither manufactured nor supplied." 2010 WL 605275, at *6.

[65]     Presumably relying upon this particular notation in
the Schaffner decision, Crane Co. asserts (in Rabovsky, No.
2:10-cv-3202, also separately before the Court) that its valves
were "asbestos-neutral" and did not require any asbestos-
containing component part to function. Therefore, according to
Crane Co., even if Pennsylvania law imposes liability on a
manufacturer for injuries caused by replacement parts that were
required in order for its product to operate, its valves do not
subject it to liability (even if the replacement parts used in
connection with the valves contained asbestos).

        Under this Court's prediction of Pennsylvania law, the
argument is unavailing, insofar as potential liability for an
aftermarket component part turns on the product manufacturer's
knowledge of the asbestos hazards that it knows will be
presented by its product as used after sale – and does not turn
directly on whether the product required an asbestos-containing
component to function. (It is worth noting, however, that, to
the extent a product manufacturer's product does require
asbestos-containing components to function, such fact may be

each of the complained-of components and the choice of
which components were used was the boiler supplier's,
not [defendant]'s. Given this, there is no basis for
holding [defendant] liable under a theory of strict
liability or failure to warn.

2010 WL 605275, at *6.

While the Schaffner court deemed the holdings of these
other jurisdictions to be consistent with the Pennsylvania
Superior Court's decision in Toth, it did not specifically
consider Pennsylvania policy on the matter – or how Pennsylvania
policy may differ from that of California, Washington, or
maritime law. Moreover, and perhaps significantly, Toth was
factually dissimilar insofar as it was not an asbestos case and
did not involve component parts of the type at issue.

c.    Kolar v. Buffalo Pumps, Inc.

The "bare metal" issue was also considered in 2010 by
Judge Sandra Mazer Moss of the Philadelphia Court of Common
Pleas, who has presided over asbestos cases for many years, in
Kolar v. Buffalo Pumps, Inc., 2010 WL 5312168 (Pa. Com. Pl. Aug.
2, 2010).[66] Kolar was an asbestos case in which the court

---

evidence of the manufacturer's knowledge that its product would
be used with asbestos-containing aftermarket parts.)

[66]    While trial court decisions are generally not relied
upon by an MDL court in predicting a state's law, in light of
her experience presiding over a large number of asbestos cases
applying Pennsylvania law, the Court finds Judge Mazer Moss's
decision particularly informed and instructive.

considered the potential liability of manufacturers of pumps and traps for asbestos-containing gaskets used in connection with the pumps and traps, but not manufactured or supplied by those manufacturers. In Kolar, Judge Mazer Moss made clear that a defendant may be held liable under the "substantial change doctrine" if the manufacturer could have foreseen the alteration of its product that led to injury. 2010 WL 5312168, at *47. However, based on the evidence in that record, she found that the defendants were entitled to summary judgment because "plaintiff could not possibly prove by a preponderance of the evidence defendants should have foreseen asbestos gaskets would be added to their pumps and traps." Id. In doing so, the court distinguished Chicano, noting that "[h]ere, plaintiffs provided not a scintilla of evidence asbestos gaskets would inevitably be added to defendants' pumps and traps. In addition, they presented no evidence the pumps or traps even required asbestos parts." Id.

In summarizing the decision, Judge Mazer Moss stated that "a manufacturer cannot be liable for injury caused by an asbestos part installed onto its product, where it does not make, supply or sell said part, where product does not require the asbestos part to function properly, and where manufacturer

does not call for use of said part." Id. at 45-46.[67] She explained that her decision "reflects the social policy underlying Pennsylvania's products liability law: personal injury losses should be allocated to those who can best mitigate and avoid such losses. . . . Pennsylvania courts have generally found manufacturers and sellers able to allocate such losses most effectively through cost increases and insurance. Therefore, liability should be borne by those who control the price and benefit from the profits." Id. at 49 (citations omitted).

Worth noting, although the evidence in that record confirmed only asbestos exposure arising from aftermarket component parts, the Kolar decision indicates that a product manufacturer can be liable under Pennsylvania law for original asbestos-containing component parts – and that such liability is premised on the product manufacturer also being a "supplier" of the original component part.[68]

---

[67] Judge Mazer Moss later summarized her decision in Kolar as follows: "[M]anufacturers cannot be liable for asbestos component parts installed where they did not make, supply, sell, or require same for proper use." Dimmick v. P&H Mining Equipment, No. 1093 EDA 2012 (June 4, 2012) at 4.

[68] Judge Mazer Moss explained: "Here, plaintiffs presented insufficient evidence to determine whether defendants' products contained original asbestos parts to which Kolar was exposed. . . . Therefore, a jury could not conclude defendants supplied the asbestos to which Kolar was exposed." 2010 WL 5312168, at *46-47.

In 2011, this MDL Court broached the "bare metal" issue in a somewhat atypical asbestos case. Hoffeditz v. AM General, LLC involved claims brought against an automobile manufacturer for injury arising from asbestos in replacement brakes used with an automobile after purchase, but neither manufactured nor supplied by the automobile manufacturer. 2011 WL 5881008 (E.D. Pa. July 29, 2011) (Robreno, J.). In its decision in Hoffeditz, this Court considered whether the automobile manufacturer had a duty to warn of the asbestos hazards associated with the asbestos-containing replacement brakes installed on its automobiles. Id.

In holding that the automobile manufacturer had a duty to warn only of the dangers (or defects) of the replacement brakes that it knew of at the time it placed the automobile into the stream of commerce, the Court acknowledged Pennsylvania's adoption of Section 402A of the Restatement (Second) of Torts, and factored in the Berkebile, Toth, Chicano, and Schaffner decisions. Id. at *1 n.1. The Court deemed Chicano analogous, noting that the defendant therein "knew that its turbines would be insulated with asbestos-containing materials and knew that they were, in fact, insulated with asbestos-containing materials." Id. (quoting Chicano, 2004 WL 2250990 at *2). It found Schaffner distinguishable because that case did not

present a fact pattern in which the defendant "knew and/or required asbestos-containing replacement parts to be used in its products." Id.

The outcome in Hoffeditz (which denied the defendant's motion seeking summary judgment on grounds of the "bare metal defense") turned on the facts that the automobiles at issue were initially supplied by the defendant with asbestos-containing brakes already installed, were specifically designed to use asbestos brakes, and could not be used with non-asbestos brakes unless the automobiles were redesigned. Id. The Court deemed this evidence that the defendant knew that its automobiles would be used with asbestos-containing replacement brakes.

In short, this MDL Court held that the defendant had a duty to warn of the hazards of asbestos in the replacement brakes because the plaintiff therein presented evidence that the defendant knew that its automobile would be used with asbestos brakes, and knew that the asbestos in those brakes was hazardous. 2011 WL 5881008, at *1. In keeping with Pennsylvania law existent at that time (prior to Tincher), Hoffeditz was construed to involve only strict liability claims.

5.    Prediction of Pennsylvania Law

In predicting whether – and to what extent – the Supreme Court of Pennsylvania would recognize the so-called

55

"bare metal defense" in the context of asbestos litigation, the Court has grappled with the tensions created by and within the various authorities considered above. Of course, of particular difficulty are those inconsistencies in law and policy that appear throughout and within authorities decided under Pennsylvania law. For instance, the Court notes that there are apparent inconsistencies even within the rationale of the Supreme Court of Pennsylvania in a single case: <u>Davis v. Berwind Corporation</u> suggests that a product manufacturer would be liable for asbestos-containing replacement component parts if the original component parts were also asbestos-containing,[69] and that a product manufacturer would be liable for external insulation used with its product if the use of that insulation was foreseeable to it.[70] 547 Pa. at 266-67, 690 A.2d at 189-90.

---

[69]    Specifically, the Pennsylvania Supreme Court states, "To recover under § 402A, a plaintiff must establish that the product was defective, that the defect was a proximate cause of the plaintiff's injuries, and that the defect causing the injury existed at the time the product left the seller's hands. [Citation omitted.] The seller is not liable if a safe product is made unsafe by subsequent changes." 547 Pa. at 266-67, 690 A.2d at 189-90 (internal citations omitted). This excerpt seems to imply that the seller is (or at least may be) liable for hazardous aftermarket components used with its product if it supplied its product with hazardous original components.

[70]    This result seems to follow from the Court's notation that, "[w]here the product has reached the user or consumer with substantial change, the question becomes whether the manufacturer could have reasonably expected or foreseen such an alteration of its product." 547 Pa. at 266-67, 690 A.2d at 189-90.

However, Davis appears to simultaneously – and seemingly
contrarily – state that a component part seller or manufacturer
is best able to shoulder the costs and to administer the risks
of a product released into the stream of commerce, and that it
is not the purpose of Section 402 to impose absolute liability
on product manufacturers – principles that suggest a product
manufacturer should not be liable for replacement component
parts or external insulation that it did not manufacture or
supply.[71] Id. The Court is mindful, however, that Davis did not
consider a factual scenario involving component parts such as
aftermarket replacement parts or external insulation.

Still, there are also inconsistencies in the case law
as to whether, when, and how Pennsylvania law imposes liability
on a product manufacturer for asbestos-containing aftermarket
component parts. The Court notes, however, that these decisions

---

[71]    The Pennsylvania Supreme Court wrote:

> Section 402A [of the Restatement (Second) of
> Torts] reflects the social policy that a seller
> or manufacturer is best able to shoulder the
> costs and to administer the risks involved when a
> product is released into the stream of commerce.
> . . . Nevertheless, it is not the purpose of §
> 402 to impose absolute liability. A manufacturer
> is a guarantor of its product, not an insurer.
> See Azzarello v. Black Brothers Co., Inc., 480
> Pa. 547, 553, 391 A.2d 1020, 1023-24 (1978).

547 Pa. at 266-67, 690 A.2d at 189-90.

were issued prior to the recent Pennsylvania Supreme Court decision in _Tincher_, which pronounces the availability of negligence causes of action (in addition to strict liability causes of action) against product manufacturers. As such, the Court perceives that the previous confusion and lack of clarity in Pennsylvania law regarding product liability claims may account for some of these apparent inconsistencies.

For this reason, the Court concludes that the new guidance in _Tincher_ warrants some adjustments to the rules of Pennsylvania law set forth in those cases (and therefore deviation from prior caselaw) to the extent necessary to conform to the policies and legal principles set forth at length in _Tincher_. At the same time, the Court seeks to reconcile this new guidance with the existent caselaw to the extent possible in order to maximize consistency and continuity in the law while establishing clear guidance for future litigants that is based on sound principles and reasoning. With the benefit of hindsight pertaining to developments in Pennsylvania law – and after having developed some expertise in asbestos-related issues, as a result of having handled thousands of asbestos cases from around the country – the MDL Court is well-situated to address now this important issue of product liability law.

Having weighed the various policy considerations, and paying due deference to doctrinal trends and Pennsylvania's

legal guidance, the Court now predicts when and how the Supreme Court of Pennsylvania would impose liability on the manufacturer (or supplier) of a product for injury arising from aftermarket component parts (generally replacement component parts and/or external insulation) used in connection with its product, but which it did not manufacture or supply.

a.    <u>Strict Liability Claims</u>

The MDL Court now predicts that, under Pennsylvania law, a manufacturer or supplier of a product is not liable in strict liability for injury arising from replacement component parts and/or aftermarket insulation used in connection with its product, but which it did not manufacture or supply. This result is the product of the construction of two key aspects of Section 402A of the Restatement (Second) of Torts.

First, the Court finds that, when applying Section 402A, Pennsylvania law would construe the term "product" such that an aftermarket component part is not the manufacturer's "product." Under this construction of the term – where the aftermarket component part (such as external insulation, replacement gaskets, or replacement packing) is a separate "product" from the manufacturer's "product" (such as a pump, valve, turbine, boiler, or engine) – the concept of "strict liability," as commonly understood, precludes such liability for

the product manufacturer when the asbestos injury was caused by asbestos in the aftermarket component part – a part that was never in the control of the product manufacturer. <u>See</u> <u>Black's</u> <u>Law Dictionary</u> (7th ed. 1999) (requiring for "strict products liability" that the product at issue was, at some point, in the "hands" of the defendant).[72] This construction is consistent with the Pennsylvania Superior Court's decision in <u>Schaffner</u> (an asbestos case), which held that "a manufacturer cannot be held liable under a theor[y] of strict liability . . . for a product it neither manufactured nor supplied." 2010 WL 605275, at *6.[73]

---

[72]     Black's Law Dictionary defines "strict products liability" as follows:

> Products liability arising when the buyer proves that the goods were unreasonably dangerous and that (1) the seller was in the business of selling goods, (2) **the goods were defective when they were in the seller's hands,** (3) the defect caused the plaintiff's injury, and (4) the product was expected to and did reach the consumer without substantial change in condition.

7th ed. (1999) (emphasis added).

[73]     This holding is also consistent with <u>Toth</u>, which considered strict liability claims. 391 Pa. Super. 383. Assuming that it was authored during the era in which it was commonly accepted that Pennsylvania did not recognize a negligence cause of action against a product manufacturer (as noted in <u>Tincher</u>) – such that it can be assumed the court was discussing a strict product liability claim, this construction is also consistent with the holding of <u>Eckenrod</u> (a 1988 asbestos decision), in which the Pennsylvania Superior Court wrote: "In order for liability to attach in a products liability action, [a] plaintiff must establish that the injuries were caused by a product of the particular manufacturer or supplier." 375 Pa. Super. at 190-91.

Second, the Court predicts that, when applying Section 402A, Pennsylvania law would hold that, as a matter of law, replacement of original component parts (and/or addition of a component part such as external insulation) constitutes a "substantial change" to the manufacturer's product, for purposes of strict liability.[74] The court finds that this result is warranted by, and comports with, the first determination – that a component part is a separate "product" for purposes of application of Section 402A. In short, because the aftermarket component part was never in the "control" of the product manufacturer, the court considers its addition to the manufacturer's product to be a "substantial change" to the product for which principles of strict liability permit the manufacturer to be responsible.[75]

Importantly, however, the same result need not arise from principles of negligence liability. Therefore, the Court next considers that issue separately.

---

[74] To be clear, the Court deems Section 402A applicable only to strict liability claims (not negligence claims).

[75] Any other holding would create the potential for a manufacturer to face strict liability for an unlimited number of other products that could theoretically be used in connection with its product after sale. As a matter of policy, the Court finds that this would exceed the bounds of reasonable application of principles of strict liability.

b.      <u>Negligence Claims</u>

It is now clear that Pennsylvania law imposes

negligence liability (in addition to strict liability) upon

product manufacturers. <u>Tincher</u>, 104 A.3d at 376, 383-84.

However, because of the prior confusion in the state on this

issue, and the conclusion by many courts that no such negligence

cause of action existed, there is a dearth of guidance from the

Pennsylvania appellate courts on the requirements for prevailing

on such a cause of action.

In <u>Tincher</u>, the Pennsylvania Supreme Court noted that

the standard for establishing a strict liability claim in

Pennsylvania is designed to be more easily satisfied than that

for a negligence claim. <u>See</u> 104 A.3d at 364, 401. With this

limited new guidance regarding the parameters of a negligence

claim against a product manufacturer, the MDL Court now

considers the potential for liability of an asbestos product

manufacturer in the context of larger policy concerns.

In discussing the standard for <u>strict liability</u>

claims, the <u>Tincher</u> court explained:

Derived from its negligence-warranty dichotomy, the
strict liability cause of action theoretically permits
compensation where harm results from risks that are
**known or foreseeable** (although proof of either may be
unavailable) — a circumstance **similar to cases in
which traditional negligence theory is implicated** —
and also where harm results from risks unknowable at
the time of manufacture or sale—a circumstance similar

>to cases in which traditional implied warranty theory
>is implicated.

104 A.3d at 404-05 (emphasis added). Pursuant to the guidance of the Pennsylvania Supreme Court, the standard for establishing liability of a product manufacturer under a negligence theory would be more stringent and, thus, more difficult to satisfy. See 104 A.3d at 364, 401.

As such, and for the reasons set forth further herein, the Court now predicts that Pennsylvania law would hold a product manufacturer liable in negligence for failing to warn about asbestos hazards of component parts used with its product which it neither manufactured nor supplied (generally aftermarket replacement parts or external insulation) only if the product manufacturer (1) knew its product would be used with an asbestos-containing component part of the type at issue,[76] (2) knew (at the time that it placed its product into the stream of commerce) that asbestos was hazardous,[77] and (3) failed to

---

[76] To be clear, as an example, if a plaintiff is suing a pump manufacturer for injury arising from asbestos-containing external insulation used with its pump (which it did not manufacture or supply), it is not enough for the plaintiff to show that the pump manufacturer knew its pump would be used with asbestos-containing gaskets or packing (or any component other than insulation). Rather, the plaintiff must show that the pump manufacturer knew its pump would be used with asbestos-containing external insulation.

[77] To be clear, the plaintiff must have evidence that the manufacturer knew that asbestos was hazardous. It is not enough

provide a warning that was adequate and reasonable under the
circumstances.[78] In other words, under Pennsylvania law, a
product manufacturer has a common law duty to warn about the
asbestos hazards of a component part later used with its
product, which it neither manufactured nor supplied (i.e., an
aftermarket component), if the manufacturer knew its product
would be used with that type of asbestos-containing component[79]

---

for a plaintiff to argue or demonstrate that a manufacturer
should have known.

[78]    Of course, under Pennsylvania law, a warning must be
adequate and reasonable under the circumstances. See Berkebile
v. Brantly Helicopter Corp., 462 Pa. 83, 337 A.2d 893, 898 (Pa.
1975) (later abrogated as to certain other points of law)
(citing Incollingo v. Ewing, 444 Pa. 263, 287, 282 A.2d 206, 219
(1971)) and Maize v. Atlantic Refining Co., 352 Pa. 51, 41 A.2d
850 (1945) for strict liability defective warning claims, and
Thomas v. Avron Products Co., 424 Pa. 365, 227 A.2d 897 (1967)
for negligent failure to warn claims).

        The Court notes that this element is generally not at
issue in asbestos cases, as it is usually undisputed that the
product manufacturer defendant did not provide asbestos-related
warnings (whether related to asbestos supplied with its own
product or that in aftermarket component parts). However, it is
worth noting that if a plaintiff challenges the adequacy of any
warning provided by a defendant, there could, in theory, remain
liability for the defendant despite its provision of an
(inadequate) warning.

[79]    This clearly differs from Washington law, which
explicitly states that, "[i]t makes no difference whether the
manufacturer knew its products would be used in conjunction with
asbestos insulation." Braaten, 165 Wash.2d at 385.

and knew when it placed the product into the stream of commerce that asbestos was hazardous.[80]

While the Pennsylvania Supreme Court noted in the above-quoted excerpt from Tincher that "traditional negligence theory" typically imposes liability for harms which were "known or foreseeable," it also went to lengths to emphasize that trial courts are to use discretion in applying the principles set forth in Tincher to products different from those addressed in Tincher.[81] Specifically, it cautioned that, "in many

---

[80]    This approach imposes liability consistent with this Court's holding in Hoffeditz v. AM General, LLC, 2011 WL 5881008. Now, in light of the recent clarification of Pennsylvania law in Tincher, it is clear that this liability sounds in negligence (not strict liability).

In turn, and as explained earlier herein, the Court deems Chicano to be consistent with Hoffeditz in this regard, insofar as the defendant in Chicano faced potential liability for failure to warn because it "knew that its turbines would be insulated with asbestos-containing materials and knew that they were, in fact, insulated with asbestos-containing materials." 2011 WL 5881008, at *1 (quoting Chicano, 2004 WL 2250990, at *2). In this way, the approach is consistent with Chicano.

This approach is also consistent with the holding of Kolar insofar as Judge Mazer Moss decided, based upon Pennsylvania social policy, that "a manufacturer cannot be liable for injury caused by an asbestos part installed onto its product, where it does not make, supply or sell said part, where product does not require the asbestos part to function properly, and where manufacturer does not call for use of said part." Id. at 45-46. In essence, this holding renders product manufacturers liable for injury arising from aftermarket component parts where there is evidence that they knew their product would be used with an asbestos-containing aftermarket component part.

[81]    The Pennsylvania Supreme Court wrote:

circumstances, courts may be called upon to examine whether the rule has outrun the reason," and exhorted that "judicial modesty counsels that we be content to permit the common law to develop incrementally, as we provide reasoned explications of principles pertinent to factual circumstances of the cases that come before the Court." 104 A.3d at 405-06.

Of particular significance, the cases now before the Court (and all cases presenting the "bare metal" issue) are distinguishable from <u>Tincher</u> in that the issue presented pertains to liability of a product manufacturer for a product that it did not manufacture or supply.[82] Therefore, the

---

But, the point that we have stressed repeatedly in this Opinion, is that courts do not try the "typical" products case exclusively and a principle of the common law must permit just application to myriad factual circumstances that are beyond our power to conceive. Circumstances like product diversity, general uncertainties inherent in the creative process, difficulties in recreating the design process, difficulties in the discovery process, to name just a few, may contribute to whether cases other than the typical case will generate a dispute and resulting decisional precedent.
    .   .   .
[W]e note that the area of [product] liability law remains complex and our decision here does not purport to foresee and account for the myriad implications or potential pitfalls as yet unarticulated or unappreciated.

104 A.3d at 405-06.

[82] Of course, it is for this very reason that this MDL Court has just held that the Defendant product manufacturers are not strictly liable for injury arising from aftermarket component parts. In addition, <u>Tincher</u> was distinguishable in

principles set forth by the Pennsylvania Supreme Court in Tincher must be carefully considered and applied in accordance with common sense and principles of fairness in applying them to this unusual factual scenario presented by the asbestos cases. It is after having factored in the specifics of the asbestos product liability cases – and having weighed the various competing considerations of protecting and compensating consumers, imposing liability on those best situated to prevent harm, and providing punishment and deterrence for those "guilty" of causing harm – that the MDL Court now predicts that a product manufacturer has a duty under Pennsylvania law to warn about the asbestos-related hazards of component parts it neither manufactured nor supplied only where the manufacturer knew that its product would be used in connection with a particular hazardous asbestos-containing component – and is not required to warn about all foreseeable hazards that could arise in connection with its product.

The Court holds further that, as a matter of law, the first requirement for negligence liability is always satisfied when a plaintiff can demonstrate that, at the time the product was placed into the stream of commerce by the defendant, it

---

that the strict liability claims presented were design defect claims (rather than defective warning claims, as presented in the asbestos cases).

contained an asbestos-containing component part of the type at issue (i.e., it was supplied with original asbestos-containing gaskets, packing and/or external insulation) without an adequate asbestos-related warning.[83] In other words, a product manufacturer who knows of the hazards of asbestos (thus satisfying the second requirement for negligence liability) and supplies its product with an original asbestos-containing component part already installed – always has a duty, under Pennsylvania law, to warn about asbestos hazards associated with that type of aftermarket component part. This is because, under these circumstances, there can be no genuine dispute as to whether the product manufacturer knew its product would be used with asbestos-containing component parts of that type. This approach is consistent with the holdings of Hoffeditz, Kolar, and Chicano.

To be clear, a product manufacturer is not liable in negligence for injury arising from all foreseeable use of asbestos-containing component parts (or all foreseeable injury associated with aftermarket component parts). To require a product manufacturer to warn of all foreseeable hazards that could arise in connection with its product (regardless of

---

[83] Of course, liability also requires proof that the product manufacturer knew of the hazards of asbestos at the time it placed its product into the stream of commerce.

whether the manufacturer actually knew that such hazards would be present) would create an undue burden on those product manufacturers – in terms of both efforts required for investigation of potentially foreseeable hazards and financial penalties imposed for hazards not discovered – which would deter the development and production of goods in our society.[84] Moreover, such a policy could result in an increase in consumer prices so large as to be prohibitive for an unreasonably large portion of the consumer population.

In drawing this line, though, the Court recognizes the practical difficulties for injured plaintiffs of identifying the manufacturers (and, sometimes, the suppliers) of aftermarket component parts – and, in particular, the gaskets and packing so frequently at issue in asbestos cases. The Court is aware that limiting a plaintiff's recovery to that from the manufacturers (and suppliers) of the gaskets and packing used with, for example, a pump, would have the practical effect of precluding recovery in most instances. This is because the asbestos exposure arising from an aftermarket component part is generally experienced as a result of removal (rather than installation) of

---

[84]     This is particularly true in light of the fact that an injured plaintiff may also seek recovery from the manufacturer (and any supplier) of the component part at issue (to the extent those component part manufacturers and suppliers can be identified).

the component – long after its packaging has been discarded by

the individual who installed it – and after normal use of the

component part (in high heat temperatures, with constant

exposure to water) has frequently deteriorated any identifying

labeling or warning that may have initially appeared on the

component prior to its use (to the extent any such on-product

labeling of a component part like gaskets or packing is even

possible). In this very common scenario, a plaintiff is unable

to identify the manufacturer or supplier of the gasket or

packing that released the asbestos, although the pump

manufacturer is generally easy to identify.

To create a rule of law that ignores the

interconnection of product and component part manufacturers –

and their abilities to use the market to distribute loss and

liability amongst themselves – would be to ignore the realities

of the economic world in which products are created.[85] Moreover,

---

[85]    The Court notes that, in general, in practice, a
product manufacturer has some ability to shift part of the cost
of warning (and accompanying liability for failures or
deficiencies in doing so) to the manufacturers of aftermarket
component parts insofar as the universe of a particular
interconnecting product and the accompanying component parts is
generally comprised of a small network of producers who depend
on each other for continuation of their businesses, and who
routinely enter into contractual relations with each other.

For example, plaintiffs in asbestos cases have
frequently testified that there were generally two or three main
manufacturers of pumps and valves in a given time period, and
two or three main manufacturers of gaskets and packing – and

imposing a duty to warn (and accompanying liability for failure

to warn) only on the entity(ies) most difficult and unlikely for

an injured plaintiff to identify would have the practical effect

of reducing significantly the potential liability of product and

component part manufacturers for the hazards their

interconnected products may create. While other jurisdictions

have adopted a rule that, in effect, yields this result,[86] it is

---

that the pumps and valves were generally supplied by their
manufacturers with gaskets and packing already installed (which
were purchased by the product manufacturers from those component
part producers) – and sometimes accompanied by extra replacement
component parts provided for later use with the product (by same
way of purchase).

[86]     For example, when considering the issue under maritime
law, the Sixth Circuit Court of Appeals held that there was
neither negligence nor strict liability for the manufacturers of
products (pumps and valves) or the manufacturers of component
parts (gaskets and packing) when a mesothelioma plaintiff who
worked in engine rooms aboard merchant vessels for 32 years sued
all types of manufacturers. See Lindstrom, 424 F.3d 488. When
considering the issue under Washington law, the Washington
Supreme Court acknowledged that an evaporator manufacturer knew
its product would be used with insulation, and that the
plaintiff did not know the identity of the company who
manufactured the insulation, but found no liability (in
negligence or strict liability) against the evaporator
manufacturer, thus leaving the lung cancer plaintiff with
(apparently) no compensation for his asbestos-related illness.
See Simonetta, 165 Wash.2d 341. Similarly, when considering the
issue under California law, the California Supreme Court held
that pump and valve manufacturers were not liable (in strict
liability or negligence) for failing to warn about asbestos-
containing replacement gaskets or packing (or external
insulation) used with its products even if those pumps and
valves had been supplied by defendants with original asbestos-
containing gaskets and packing about which they failed to
provide any warning. See O'Neil, 53 Cal.4th 335.

now clear from <u>Tincher</u> that this result conflicts with Pennsylvania law's primary policy goal of consumer protection and compensation and its deliberate creation of two separate and different claims against product manufacturers (sounding in both negligence and strict liability) designed to further that policy objective.

In taking this approach, however, the Court balances this policy goal with considerations of fairness to product manufacturers (such as the pump manufacturers), who are not the only entity involved in the creation and supply of the hazard from which the plaintiff was injured. It is, in part, for this reason that the Court has determined that a product manufacturer is not liable for all foreseeable hazards associated with aftermarket component parts – or even that it has a duty to undertake reasonable investigation to identify all potential hazards associated with those parts – despite the fact that the Pennsylvania Supreme Court has acknowledged in <u>Tincher</u> that this is generally the standard (or duty) associated with common law negligence liability. 104 A.3d at 404-05.

---

This Court notes, however, that it is also aware that other courts considering the "bare metal" issue have likely not had the benefit of handling a large number of asbestos cases and, thus, learning in detail about the circumstances and specifics surrounding the numerous different products, component parts, and accompanying issues implicated in the litigation.

In short, the Court has drawn a line of liability that seeks to further all three stated policy considerations of the Pennsylvania Supreme Court while factoring in practical considerations, common sense, and fairness to all potential defendants so that the rule has not "outrun the reason." The rule set forth herein encourages both product and component part manufacturers to provide warnings of hazards like asbestos, such that injuries to plaintiffs can be avoided – and, where a failure to provide such warnings has occurred, allocates to each type of entity some amount of financial liability to plaintiffs who are injured as a result of that failure.[87]

Utilizing this prediction of Pennsylvania law, the Court will next consider whether and when a plaintiff has carried his or her burden of proof.

---

[87] Because of the large combination of products (such as pumps, valves, turbines, boilers, and engines) and aftermarket component parts with which they are used (such as gaskets, packing, and external insulation) – as well as the large number of variations that occur within a line of products or aftermarket component parts – it would be somewhat infeasible for a court to address liability solely in terms of which entity in each scenario was best situated as a practical matter to provide the plaintiff a warning that would be effective. It is, in part, for this reason that policy encouraging warnings by all involved entities (or coordination between those entities as to who and how a warning is best issued) is desirable.

D.    General Application of Strict Liability and Negligence
      Principles

          For purposes of illustrating the application of the

principles set forth herein, the Court now considers a number of

scenarios that may be presented in an asbestos action brought

against product and component part manufacturers and suppliers,

and explains how the cases now before the Court fit into these

scenarios.[88] The evidence and factual scenarios presented in

asbestos cases will almost always fall into one of the following

scenarios:

          1.    Product Manufacturer Scenario No. 1

          A pump manufacturer is sued for injury from asbestos-

containing aftermarket packing that it did not manufacture or

supply but which was used with the pump after it was placed into

the stream of commerce (e.g., replacement packing installed into

the pump a year after the customer began using the pump). In

this scenario, when the pump was placed by the manufacturer into

the stream of commerce, it contained asbestos packing that the

pump manufacturer had purchased from a packing manufacturer and

_____

          [88]    Unless specified otherwise, each scenario assumes that
(1) the manufacturers and suppliers have not provided any
asbestos-related warnings with the products or component parts
at issue, and (2) for purposes of considering the negligence
claims, the plaintiff has evidence that the manufacturers and
suppliers knew of the hazards of asbestos at the time they
placed the product into the stream of commerce (a factor
irrelevant to claims sounding in strict liability).

74

installed into its pump (i.e., the pump contained "original" asbestos packing). Under this Court's prediction of Pennsylvania law, the pump manufacturer: (a) is <u>not</u> liable in <u>strict liability</u>, but (b) <u>is</u> potentially[89] liable in <u>negligence</u> because it cannot be genuinely disputed that the pump manufacturer knew its pump would be used with asbestos packing (as evidenced by the fact that it initially placed the pump into the stream of commerce with asbestos packing already installed).

### 2. <u>Product Manufacturer Scenario No. 2</u>

A valve manufacturer is sued for injury from asbestos-containing aftermarket gaskets that it did not manufacture or supply but which were used with the valve after it was placed into the stream of commerce (e.g., gaskets installed into the valve at some time after the customer began using the valve). In this scenario, when the valve was placed by the manufacturer into the stream of commerce, it contained an asbestos gasket that the valve manufacturer had purchased from a gasket manufacturer and installed into its valve (i.e., the valve contained "original" asbestos gaskets). However, in this scenario, <u>the plaintiff does not have any evidence</u> of the fact

---

[89]    Of course, liability requires that the other two elements of a negligent failure to warn claim be satisfied as well (as is assumed for these scenarios). <u>See</u> footnote 88 herein.

that the valve was placed into the stream of commerce with
"original" asbestos gaskets (or other evidence that the
Defendant knew that the valve would be used by the customer with
asbestos gaskets). Under this Court's prediction of Pennsylvania
law, the valve manufacturer: (a) is <u>not</u> liable in <u>strict
liability</u> because the injury arose from the aftermarket
replacement gasket (not the original gasket supplied by the
valve manufacturer), and (b) is <u>not</u> liable in <u>negligence</u> because
there is no evidence that the valve manufacturer knew its valve
would be used with asbestos gaskets.

### 3. <u>Product Manufacturer Scenario No. 3</u>

A turbine manufacturer is sued for injury from
asbestos-containing aftermarket gaskets that it did not
manufacture or supply but which were used with the turbine after
it was placed into the stream of commerce (e.g., gaskets
installed into the turbine at some time after the customer began
using the turbine). In this scenario, when the turbine was
placed by the manufacturer into the stream of commerce, it
contained a neoprene (i.e., asbestos-free) gasket that the
turbine manufacturer had purchased from a gasket manufacturer
and installed into its turbine (i.e., the turbine did <u>not</u>
contain "original" asbestos gaskets). In this scenario, the
plaintiff does not have any evidence that the turbine

manufacturer knew its turbine would be used with asbestos
aftermarket gaskets. Under this Court's prediction of
Pennsylvania law, the turbine manufacturer: (a) is <u>not</u> liable in
<u>strict liability</u> because the injury arose from the aftermarket
replacement gasket (not the original gasket supplied by the
turbine manufacturer), and (b) is <u>not</u> liable in <u>negligence</u>
because there is no evidence that the turbine manufacturer knew
its turbine would be used with asbestos gaskets.

    4.   <u>Product Manufacturer Scenario No. 4</u>

      A boiler manufacturer is sued for injury from
asbestos-containing aftermarket gaskets that it did not
manufacture or supply but which were used with the boiler after
it was placed into the stream of commerce (e.g., gaskets
installed into the boiler at some time after the customer began
using the boiler). In this scenario, when the boiler was placed
by the manufacturer into the stream of commerce, it contained a
neoprene (i.e., asbestos-free) gasket that the boiler
manufacturer had purchased from a gasket manufacturer and
installed into its boiler (i.e., the boiler did <u>not</u> contain
"original" asbestos gaskets). In this unusual scenario, however,
the plaintiff has evidence that the boiler manufacturer knew its
boiler would be used by the customer with asbestos aftermarket
gaskets (e.g., a letter from the customer setting forth its

purchase order, which states that the customer needs a boiler
that will function with its existent vast supply of asbestos-
containing gaskets of a certain size). Under this Court's
prediction of Pennsylvania law, the boiler manufacturer: (a) is
not liable in strict liability because the injury arose from the
aftermarket replacement gasket (not the original gasket supplied
by the boiler manufacturer), but (b) is potentially liable in
negligence because there is evidence that the boiler
manufacturer knew its boiler would be used with asbestos
gaskets.

### 5.    Product Manufacturer Scenario No. 5

An engine manufacturer is sued for injury from
asbestos-containing aftermarket insulation that it did not
manufacture or supply but which was used with the engine after
it was placed into the stream of commerce (e.g., insulation
installed around the engine at some time after the customer
began using the engine). In this scenario, when the engine was
placed by the manufacturer into the stream of commerce, it did
not have any external asbestos insulation installed on it and
was not supplied by the engine manufacturer with accompanying
asbestos insulation (i.e., the engine was not supplied with
"original" asbestos insulation). In this scenario, the plaintiff
does not have any evidence that the engine would be used with

aftermarket asbestos insulation. Under this Court's prediction
of Pennsylvania law, the engine manufacturer: (a) is <u>not</u> liable
in <u>strict liability</u> because the injury arose from aftermarket
insulation, and (b) is <u>not</u> liable in <u>negligence</u> because there is
no evidence that the engine manufacturer knew its engine would
be used with asbestos insulation.

## 6. <u>Product Manufacturer Scenario No. 6</u>

An engine manufacturer is sued for injury from
asbestos-containing aftermarket insulation that it did not
manufacture or supply but which was used with the engine after
it was placed into the stream of commerce (e.g., insulation
installed around the engine at some time after the customer
began using the engine). In this scenario, when the engine was
placed by the manufacturer into the stream of commerce, it did
not have any external asbestos insulation installed on it and
was not supplied by the engine manufacturer with accompanying
insulation (i.e., the engine was <u>not</u> supplied with "original"
insulation – whether asbestos-containing or asbestos-free). In
this scenario, the plaintiff has evidence that the Defendant
knew the engine would be used with aftermarket insulation.
However, the plaintiff does not have evidence that the engine
manufacturer knew the engine would be used with asbestos-
containing insulation (as opposed to asbestos-free insulation).

Under this Court's prediction of Pennsylvania law, the engine manufacturer: (a) is <u>not</u> liable in <u>strict liability</u> because the injury arose from aftermarket insulation, and (b) is <u>not</u> liable in <u>negligence</u> because there is no evidence that the engine manufacturer knew its engine would be used with asbestos insulation (as opposed to asbestos-free insulation).

       7.   <u>Product Manufacturer Scenario No. 7</u>

A pump manufacturer is sued for injury from asbestos-containing aftermarket gaskets <u>and</u> packing that it did not manufacture or supply but which were used with the pump after it was placed into the stream of commerce (e.g., replacement gaskets and replacement packing installed into the pump approximately a year after the customer began using the pump). In this scenario, when the pump was placed by the manufacturer into the stream of commerce, it contained asbestos gaskets <u>and</u> asbestos packing that the pump manufacturer had purchased from gasket and packing manufacturers and installed into its pump (i.e., the pump contained "original" asbestos gaskets and "original" asbestos packing). In this scenario, the pump manufacturer had included a warning on the pump about the asbestos hazards associated with asbestos gaskets (but did not include a warning on the pump regarding the asbestos hazards associated with asbestos packing). Under this Court's prediction

of Pennsylvania law, the pump manufacturer: (a) is not liable in strict liability because the injury arose from aftermarket gaskets or packing, (b) is potentially liable in negligence for injury arising from the aftermarket asbestos packing – even though it provided a warning regarding asbestos gaskets – because it cannot be genuinely disputed that the pump manufacturer knew its pump would be used with asbestos packing (as evidenced by the fact that it initially placed the pump into the stream of commerce with asbestos packing already installed) – and it did not provide a warning regarding the hazards of asbestos packing, and (c) is, generally,[90] not liable in negligence for injury arising from the aftermarket asbestos gaskets because it provided a warning on the pump pertaining to the hazards of asbestos gaskets.

### 8.   Product Supplier (All Scenarios)

Under this Court's prediction of Pennsylvania law, a supplier of a product (such as a pump, valve, turbine, boiler, or engine) is liable for injury from an asbestos-containing aftermarket component (e.g., replacement gaskets, replacement packing, or external insulation installed or applied to the product after it passed through the supplier's hands) to the same extent as the product manufacturer. Therefore, in short, a

---

[90]     But see footnote 78 herein.

product supplier can merely be substituted for the product
manufacturer in the above scenarios.[91]

### 9. Insulation Manufacturer (All Scenarios)

Under this Court's prediction of Pennsylvania law, an
insulation manufacturer is always subject to liability in both
strict liability and negligence for injury arising from its
insulation if it did not provide an adequate warning about any
asbestos hazards associated with its insulation. This is true
regardless of whether the insulation is utilized as "original"
insulation or "aftermarket" insulation.[92]

### 10. Component Part Manufacturer (All Scenarios)

Under this Court's prediction of Pennsylvania law, a
manufacturer of a component part (such as gaskets or packing) is
always subject to liability in both strict liability and
negligence for injury arising from the component part it
manufactured if it did not provide an adequate warning about any
asbestos hazards associated with its component part. This is

---

[91]     The Court notes that this has long been true under
Pennsylvania law. See Eckenrod v. GAF Corp., 375 Pa. Super. 187,
544 A.2d 50, 52-53 (Pa. Super. Ct. 1988); Gregg v. VJ Auto
Parts, Co., 596 Pa. 274, 943 A.2d 216, 225-26 (Pa. 2007); Howard
v. A.W. Chesterton Co., 31 A.3d 974, 979 (Pa. Super. Ct. 2011).

[92]     This, too, has long been true under Pennsylvania law.
See Eckenrod, 544 A.2d at 52-53; Gregg, 943 A.2d at 225-26;
Howard, 31 A.3d at 979.

true regardless of whether the component part is utilized as an "original" part or as an "aftermarket" or "replacement" part.[93]

### 11. Insulation Supplier (All Scenarios)

Under this Court's prediction of Pennsylvania law, an insulation supplier is always subject to liability in both strict liability and negligence for injury arising from insulation it supplied if it did not provide (or pass along) an adequate warning about any asbestos hazards associated with that insulation. This is true regardless of whether the insulation is utilized as "original" insulation or "aftermarket" insulation.[94]

### 12. Component Part Supplier (All Scenarios)

Under this Court's prediction of Pennsylvania law, a supplier of a component part (such as gaskets or packing) is always subject to liability in both strict liability and negligence for injury arising from the component part it supplied if it did not provide (or pass along) an adequate warning about any asbestos hazards associated with that component part. This is true regardless of whether the component

---

[93]    Again, this has long been the case under Pennsylvania law. See Eckenrod, 544 A.2d at 52-53; Gregg, 943 A.2d at 225-26; Howard, 31 A.3d at 979.

[94]    This does not establish anything new under Pennsylvania law. See Eckenrod, 544 A.2d at 52-53; Gregg, 943 A.2d at 225-26; Howard, 31 A.3d at 979.

part is utilized as an "original" part or as an "aftermarket" or "replacement" part.[95]

###### E.    Resolution of the Present Case

The Court now applies its prediction of Pennsylvania law to the evidence and factual scenario presented in the case now before the Court:

Plaintiff alleges that Mr. Schwartz was exposed to asbestos from insulation that covered propeller controls, fuel lines, and engine controls on engines manufactured by Defendant Pratt & Whitney for C-118 aircraft – and that this exposure was a cause of Mr. Schwartz's illness.[96] The parties do not dispute that Defendant neither manufactured nor supplied the insulation at issue. There is evidence in the record that (arguably) supports a conclusion that Defendant knew its engines would be insulated with asbestos-containing insulation. (Ex. E to Def.

---

[95]    This, too, merely restates longstanding Pennsylvania law. See Eckenrod, 544 A.2d at 52-53; Gregg, 943 A.2d at 225-26; Howard, 31 A.3d at 979.

[96]    The Court reviewed the record and determined that Plaintiff has presented evidence (specifically, testimony from Mr. Schwartz's deposition) sufficient to support a finding of causation with respect to the asbestos insulation used with the engines at issue – as is required to establish liability in all asbestos cases in Pennsylvania (regardless of whether or not they present the "bare metal" issue). See Gregg, 943 A.2d at 225-26; Linster, 21 A.3d at 223-24; Howard, 31 A.3d at 979.

Mem. of Law in Support of Mot. for Summary Judgment, at 23, ECF
No. 61.[97])

This scenario is like Product Manufacturer Scenario
No. 4 in the examples above, which leads to two conclusions:
(1) because there is no evidence that Defendant manufactured or
supplied the insulation used with its engine, which caused Mr.
Scwartz's illness, Defendant is entitled to summary judgment on
Plaintiff's strict liability claims against it; and (2) because
there is evidence in the record that (arguably) supports a
conclusion that Defendant knew its engines would be insulated
with asbestos-containing insulation, Defendant is potentially
liable in negligence (if all elements of the negligent failure
to warn cause of action are satisfied).

---

[97]     Defendant's corporate representative, John Sumner,
provided testimony that, when construed in the light most
favorable to Plaintiff, arguably indicates that all possible
asbestos use in connection with Defendant's engines was
anticipated by Defendant. Specifically, the testimony was as
follows:

> Q:   Can you think of any reason why asbestos – any
>      asbestos-containing material would be used
>      anywhere on the [aircraft] that was not
>      anticipated by Pratt & Whitney when they built
>      and supplied the engines?
>
> A:   No.

(ECF No. 61, at 91.) In light of the fact that Plaintiff's
negligence claim fails for other reasons, the Court need not
make a determination as to whether this testimony is sufficient
to support a finding that Defendant knew the engines at issue
would be insulated with asbestos-containing aftermarket
insulation.

In this case, however, the Court has ultimately determined that Defendant is also entitled to summary judgment on Plaintiff's negligent failure to warn claim because there is no evidence in the record that Pratt & Whitney knew of the hazards of asbestos at the time it placed the engines at issue into the stream of commerce (or any other time).[98] In other words, Plaintiff's evidence satisfied some, but not all, of the requirements of a negligent failure to warn claim.

In short, when applying the Court's prediction of Pennsylvania law on the issue of the so-called "bare metal defense," the evidentiary record in this case requires that summary judgment be granted in its entirety in favor of Defendant Pratt & Whitney.

## IV. CONCLUSION

The Court concludes that, under Pennsylvania law, a manufacturer (or supplier) of a product (1) is not strictly liable for aftermarket asbestos-containing component parts (such as gaskets, packing, or insulation) that it neither manufactured nor supplied – even though used in connection with that manufacturer's (or supplier's) product, but (2) has a duty

---

[98] For this reason, the Court need not consider whether there is evidence in the record that Defendant failed to provide an asbestos-related warning that was adequate and reasonable under the circumstances (i.e., that there is evidence to support the final element of a negligent failure to warn claim).

(premised on common law and creating a cause of action in negligence) to warn of the asbestos hazards of such aftermarket component parts if it (a) knew that an asbestos-containing component part of that type would be used with its product, and (b) knew (at the time it placed its product into the stream of commerce) that there were hazards associated with asbestos.

The Court further concludes and clarifies that, as a matter of law, a manufacturer (or supplier) of a product who knows of the hazards of asbestos and places its product into the stream of commerce with an asbestos-containing component part already installed (or accompanying the product) always has a duty to warn of asbestos-related hazards associated with aftermarket replacement component parts of that type.

Summary judgment in favor of Defendant Pratt & Whitney is granted with respect to Plaintiff's strict liability claims arising from aftermarket external insulation because, under Pennsylvania law, a manufacturer is never strictly liable for injury caused by aftermarket insulation (or aftermarket component parts). Summary judgment in favor of Defendant is granted with respect to Plaintiff's negligent failure to warn claims arising from aftermarket external insulation because, although Plaintiff has identified evidence that Pratt & Whitney (a) knew its engines would be used with asbestos-containing aftermarket external insulation, there is no evidence in the

record that it (b) knew (at the time it placed the engines at issue into the stream of commerce) that asbestos was hazardous. In light of this insufficiency in the evidence, summary judgment on Plaintiff's negligent failure to warn claim is warranted regardless of whether there is evidence that Defendant (c) failed to provide an asbestos-related warning that was adequate and reasonable under the circumstances – because, under Pennsylvania law, a product manufacturer (or supplier) has a duty to warn only of asbestos hazards it knows are present in the aftermarket component parts it knows will be used in connection with its product.

An appropriate order follows.